## DARRELL E. HARTLE AND OTHERS v. CITY OF GLENCOE.

226 N. W. 2d 914.

March 7, 1975—No. 44813.

*Smith & Hendricksen, Lee LaBore, Johnson, Schmidt, Thompson, Lindstrom & Thompson, John C. Lindstrom,* and *John Mack,* for appellants.

*Gavin, Gavin & Olson* and *Michael M. Gavin,* for respondent.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

PER CURIAM.

Appellants challenge the validity of assessments levied by respondent for sewer and water improvements. The district court upheld the assessments and we affirm.

Respondent city of Glencoe has a population of 4,500 people. The city includes older residential areas as well as several new additions, including one known as Glenview Woods. Appellants

are residents of Glenview Woods. The older residential area has been served by city sewer and water for some time. In 1966, the city council first discussed the possibility of extending sewer and water service to the new additions. However, at that time the Glenview Woods area was not within the Glencoe city limits. The city council ordered preliminary reports on the feasibility of the extension anyway and eventually annexed Glenview Woods.[1]

Minn. St. 429.031, subd. 1, provides that before awarding the contract for an improvement such as this one, the city council must hold a public hearing on the desirability and feasibility of the improvement. Respondent held this hearing on October 22, 1970, and awarded the contract on November 30, 1970, and has, therefore, fulfilled this statutory requirement. Appellants, however, claim that this hearing was a sham because respondent had committed itself to the project prior to the hearing and that the resulting assessments are, therefore, invalid. Appellants base this claim on the fact that before this hearing was held respondent took several preliminary steps, including the following: (1) Respondent hired an engineering firm to prepare a preliminary report on the improvement and eventually accepted this report and ordered final plans and specifications prepared; (2) respondent submitted to the Minnesota Pollution Control Agency a report on the adequacy of the waste treatment plant, which was necessary before the improvement project could qualify for Federal funds; (3) respondent applied for and accepted a Federal grant for part of the project; and (4) respondent entered into a contract with the State Highway Department concerning the intersection of the improvement project with Highway No. 212.

While it is true that respondent did a considerable amount of preliminary work prior to holding the public hearing required by § 429.031, the preliminary steps did not invalidate the hearing or the resulting assessments. Section 429.031 specifically pro-

---

[1] That annexation was upheld by this court in In re Annexation of Land to City of Glencoe, 288 Minn. 190, 179 N. W. 2d 279 (1970).

vides that the council is to prepare a preliminary report on proposed projects and that prior to the desirability and feasibility hearing the council may take such preliminary steps, including the preparation of plans and specifications and the advertisement for bids, as will in its judgment help the council and the public make an informed decision. This was a large project which was further complicated by the need to obtain Federal funds, comply with the requirements of the Pollution Control Agency, and tie the project in with the reconstruction of Highway No. 212. In light of these factors, we hold that respondent was acting within the discretionary authority granted by § 429.031.

At the hearing of October 22, 1970, the city council estimated that the assessment would be 6.8 cents per square foot. However, when the assessment roll was finally adopted, the assessment was set at 9.974455 cents per square foot. Appellants argue that because of this discrepancy, the council should have held a second hearing on the project. We disagree. This discrepancy occurred because respondent overestimated the amount of property which would be subject to assessment and not because the city underestimated the total cost of the improvement. In fact, the estimated total cost in the notice of hearing and the actual cost of this improvement were virtually identical. This error, though unfortunate, was the result of a good-faith attempt on the part of respondent to fully inform the public, and those present at the hearing were aware that this was only an estimate. The statute only requires that the city put the estimated total cost of the proposed improvement in the notice of hearing, and this was done. Appellants had adequate notice of the hearing of October 22, 1970, and of the meeting at which the council considered the proposed assessment roll prior to its adoption. Appellants were aware of the total cost of the improvement project prior to its adoption and had ample opportunity to voice any objections they might have had at that time.

Appellants also argue that the assessments levied by respondent were arbitrary and that respondent failed to properly ap-

portion the cost of the improvement between appellants' property and other property benefited by the improvement. Specifically, this improvement was designed to be capable of future expansion, with the expansion capability provided by using larger sewer and water pipes and by placing the sewer pipes at greater depths in some places. Respondent, pursuant to § 429.051, deferred the assessment of these areas until a time when these areas are connected to the system by additional improvements.[2] The amount deferred was calculated by determining the cost of the larger pipe and the cost of placing it at greater depths. This amount was then credited against the current assessments. The total cost of the project, which included some construction not of direct benefit to the Glenview Woods area, less the amount received from the Federal government was approximately $490,000; $220,000 of this amount was attributable to the Glenview Woods area and was assessed currently against property immediately taken into the system, and $270,000 was deferred or absorbed by the city.

Respondent could have levied assessments against any property benefited by the improvement even if this property was not immediately taken into the sewer and water system. Benefits are measured by increased market value, and the market value of a lot may be increased by potential access to city sewer and water. See, City of St. Paul v. Sanborn, 176 Minn. 62, 222 N. W. 522 (1928). If nonabutting properties may be served by the improvement, the clerk and the city engineer must determine the amount by which such property is benefited by the improvement.

---

[2] Part of the area indirectly benefited by the improvement is immediately south of Glenview Woods but that area has not been assessed because it is not within the Glencoe city limits. One parcel of property benefited by the improvement is currently used as a golf course. Respondent has not levied the assessment against the entire golf course but did assess that portion of the property on which the clubhouse is located. Respondent did this because of its conclusion that the golf course would remain a golf course in the future and that only the clubhouse would be currently benefited by city sewer and water.

Section 429.051 permits these amounts to be assessed currently or deferred until the later extensions and improvements are made. At that later time, the city may recover for the benefits which are not initially assessed by adding the amount deferred to the later assessments. Quality Homes, Inc. v. Village of New Brighton, 289 Minn. 274, 183 N. W. 2d 555 (1971).

The levying of an assessment is a legislative act, and an assessment made by the body charged with the duty of levying an assessment is presumed to be lawful and correct as to both the property assessed and the amount assessed against it. The courts may interfere with these decisions only when they are clearly erroneous. In re Appeals by American Oil Co. v. City of St. Cloud, 295 Minn. 428, 206 N. W. 2d 31 (1973). We hold that respondent acted properly in levying the assessments in this instance.

Lastly, appellant Hartle argues that the assessment to his property exceeds the benefit to his property and that it therefore constitutes a taking of his property for public use without due process of law.[3]

The constitution mandates that assessments must be uniform upon the same class of property, confined to property specially benefited by the improvement, and must not exceed those special benefits. Quality Homes, Inc. v. Village of New Brighton, *supra*; State ex rel. Oliver Iron Min. Co. v. City of Ely, 129 Minn. 40, 151 N. W. 545 (1915). And the basis for the levy of an assessment for local improvements is that the property assessed is benefited by the improvement. Quality Homes, Inc. v. Village of New Brighton, *supra*. The value of the benefit is found by determining what increase, if any, there has been in the market value of the benefited land. E. H. Willmus Properties, Inc. v. Village of New Brighton, 293 Minn. 356, 199 N. W. 2d 435 (1972). The trial court found that there was an increase in the fair market value of Hartle's property as a result of the connection to city sewer

---

[3] This issue was tried only as it applied to appellant Hartle and was severed from the other appeals for separate trials as to each appellant.

and water and that the increase was greater than the assessment levied by respondent. There is conflicting testimony on this question, but it is up to the finder of fact to resolve this conflict. There is evidence to support the trial court's finding and we therefore hold that the assessment to appellant Hartle's property is valid.

Appellants have raised several other questions on this appeal. We have examined them and find them to be without merit.

Affirmed.