## CARLSON-LANG REALTY COMPANY v. CITY OF WINDOM.

240 N. W. 2d 517.

March 12, 1976—No. 45188.

___

[9] Repealed by L. 1973, c. 410, § 19, and replaced by Minn. St. 82.33, subd. 1.

*Schmidt, Thompson, Lindstrom & Thompson, John C. Lindstrom,* and *John E. Mack,* for appellant.

*Ruenitz & Gudmestad* and *T. K. Gudmestad,* for respondent.

Heard before Peterson, Kelly, and MacLaughlin, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

Appellant, Carlson-Lang Realty Company, appeals from the denial of its post-trial motion following a decision of the District Court of Cottonwood County which upheld a special assessment levied by respondent, City of Windom, on nine vacant lots owned by appellant. The development in which these lots are located was serviced by a private sewer and water system at the time it was annexed by the City of Windom, but the city decided to extend the city sewer and water system rather than purchase the private system. For this improvement it levied a special assessment averaging $1,897 per lot.

Appellant challenged the city's action in the district court, which upheld the assessment. We reverse, for the reason that part of the assessment represents an unconstitutional taking without compensation.

We have stated the limitations on a city's power of special assessment to be these: (a) The land must receive a special benefit from the improvement being constructed, (b) the assessment must be uniform upon the same class of property, and (c) the assessment may not exceed the special benefit. Quality Homes, Inc. v. Village of New Brighton, 289 Minn. 274, 183 N. W. 2d 555 (1971); State ex rel. Oliver Iron Min. Co. v. City of Ely, 129 Minn. 40, 47, 151 N. W. 545, 547 (1915). Special benefit is measured by the increase in the market value of the land owing to the improvement. Gibbish v. Village of Burnsville, 294 Minn. 318, 200 N. W. 2d 310 (1972); City of St. Louis Park v. Engell, 283 Minn. 309, 316, 168 N. W. 2d 3, 8 (1969).

In appraising the subject property, an appraiser determines what a willing buyer would pay a willing seller for the property before, and then after, the improvement has been constructed.

In the instant case, the first determination to be made was how much a willing buyer would pay for the nine lots if they were served by a private system that seemed to work well but had no fire hydrants; had no permit or franchise from the city; required septic tanks for each lot; emptied into the river and could not meet all governmental regulations, perhaps making mortgage money more difficult to obtain; was not straight for line-of-sight inspection between manholes; and was, in some instances, laid inside lots and not within the easement strip. The second determination was then how much more a willing buyer would pay for the same property if it was to be served by an additional new system which would correct the above deficiencies. This increase in market value was the special benefit conferred. If the assessment is set higher than the special benefit conferred, it is a taking without compensation to the extent of the excess. Quality Homes, Inc. v. Village of New Brighton, 289 Minn. 274, 183 N. W. 2d 555 (1971); State ex rel. Oliver Iron Min. Co. v. City of Ely, 129 Minn. 40, 45, 151 N. W. 545, 547 (1915).

Until it is proven to the contrary, the city is presumed to have set the assessment legally, and thus introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed special benefit. An appellant may, however, overcome the presumption by introducing competent evidence that the assessment is greater than the increase in market value of the property due to the improvement. E. H. Willmus Prop. Inc. v. Village of New Brighton, 293 Minn. 356, 199 N. W. 2d 435 (1972). When evidence is also received that the assessment is equal to or less than the increased market value, the district court must make a factual determination. The proper standard of review was summarized in Quality Homes, Inc. v. Village of New Brighton, 289 Minn. 274, 280, 183 N. W. 2d 555, 559 (1971), quoting In re Improvement of Superior Street, Duluth, 172 Minn. 554, 559, 216 N. W. 318, 320 (1927), as follows:

" 'An assessment regularly made in due process and under express legislative authority is prima facie valid and, in the absence

of fraud, mistake or illegality, is conclusive upon the courts, except that an assessment upon property not specially benefited, or an assessment in excess of the special benefits to the property, would be the taking or confiscating of private property without compensation and would violate the state constitution and the fourteenth amendment to the federal constitution. Therefore, the questions of whether or not the property assessed receives any special benefits, and whether or not the assessment made is greatly in excess of any special benefits received, are questions open for review by the courts.' "

The district court in the case before us believed the standard was whether the assessment exceeded the benefit by a substantial amount. While the court cited no specific authority for this proposition, it may have been relying on dicta in E. H. Willmus Prop. Inc. v. Village of New Brighton, 293 Minn. 356, 360, 199 N. W. 2d 435, 438 (1972), in which we said, "The question remains whether or not the evidence in the record justified the further conclusion of the court that benefits conferred were substantially equal to the assessments levied." In contrast to the reference to "substantially equal," however, is our statement in the next paragraph of the same opinion that the question is open for review "whether the assessment made *exceeds* the special benefit." (Italics supplied.) Similar statements are found in the two additional cases cited by the district court. In Village of Edina v. Joseph, 264 Minn. 84, 97, 119 N. W. 2d 809, 818 (1962), we stated that "* * * an assessment can be made *only to the extent* of special benefits." (Italics supplied.) In Quality Homes, Inc. v. Village of New Brighton, 289 Minn. 274, 279, 183 N. W. 2d 555, 559, we said that we must determine that "* * * the assessments *did not exceed* the special benefits." (Italics supplied.) Our most recent statement was made in Hartle v. City of Glencoe, 303 Minn. 262, 266, 226 N. W. 2d 914, 918 (1975) : "The constitution mandates that assessments * * * *must not exceed* those special benefits." (Italics supplied.)

The assessment for the subject property in this case was $17,071. Appellant's appraiser testified that the improvement had caused an increase in market value of only $7,458, resulting in an uncompensated taking of $9,613.

Respondent's appraiser testified that the pre-improvement value was between $2,000 and $2,500, and the post-improvement value was $3,000 per lot. Thus, respondent's own evidence indicates the market value for the nine subject lots increased only $4,500 to $9,000. When compared to the assessment, this would indicate an uncompensated taking of between $8,071 and $12,571.

The district court determined, however, that the value of the private system should be deducted from the pre-improvement value of the land, which reduced the calculated overassessment (using appellant's evidence) to $2,413. The court reasoned (a) that the city could at any time prevent the use of the private system, and (b) if its value were included in the pre-improvement value it might effectively prevent assessment for the cost of the city system.

The first of the court's reasons for excluding value attributed to the private system is unsound. The question is how the market value of the land changed because of the improvement. Market value is what a willing buyer would pay a willing seller. What a willing buyer would pay for the land as served by the private system depends not so much on whether the private system is licensed or franchised, but, rather, on how likely it is to continue in operation. The slight probability that the city might move to close it down would reduce what the buyer would be willing to pay somewhat, but only slightly. Much more important to his maximum bidding price would be whether the city had made any indications that it was actively considering forbidding the use of the private system. No such evidence was introduced, so it would seem that to a willing buyer it would make little difference that the city might have a legal right to shut down the private system.

In Housing & Redevelopment Authority of Minneapolis v. Phil-

lips Petroleum Co. 294 Minn. 410, 202 N. W. 2d 214 (1972), the condemning authority argued that because a junk yard or wrecking yard was operating without a license, its operation should not be considered as enhancing the value of the property. We held to the contrary, noting that the evidence had not indicated any reasonable possibility that the city intended to shut down the operation. We acknowledged the general rule that an owner of land is not entitled to receive payment for any enhanced value which is attributable to its illegal use, but we distinguished those cases in which the use is absolutely prohibited by law or in which there is such a reasonable likelihood of the use being prohibited that the enhanced value is adversely affected. 294 Minn. 413, 202 N. W. 2d 216.

The second of the district court's reasons for deducting the value of the private system, that if it were not deducted the city might be effectively prevented from assessing the cost of the new system, is a practical reason rather than a legal reason. The legal limit on special assessments is that they may not exceed the increase in market value of the assessed property, and as a practical matter this means many improvements may not be fully assessed but must be funded through some other means, such as general property taxes.

The scope of our review is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment. G. C. Kohlmier, Inc. v. Albin, 257 Minn. 436, 101 N. W. 2d 909 (1960). In this case the district court upheld the assessment even though it found an overassessment of some $2,413 and even though the evidence indicated an overassessment of between $8,071 and $12,571. Thus, we reverse and remand because the order of the district court was not supported by the findings, and the findings were not supported by the evidence.

Appellant also suggests that it has sustained other damages from the city's action in that while it formerly operated the pri-

vate system as a business, when the city system is extended to this development appellant will lose all its former customers. Thus appellant argued the district court should award it damages as in an inverse condemnation action. While appellant's action challenging the amount of this assessment ripened at the time appellant became liable to pay the assessment, it appears this latter claim will accrue, if at all, only when the new system is constructed and appellant actually loses customers. At such time appellant could raise the issue in some separate action. We of course express no opinion on what would be the probable merits of such an action.

We reverse and remand with instructions to enter new findings and an order not inconsistent with this opinion.