Leo C. BUETTNER, Respondent,

v.

CITY OF ST. CLOUD, Appellant.

No. 47956.

Supreme Court of Minnesota.

March 16, 1979.

Bernard E. Boland, City Atty., St. Cloud, for appellant.

Hall, Byers, Hanson, Steil & Weinberger, Stanley J. Weinberger and L. M. Hall, Jr., St. Cloud, for respondent.

Stanley G. Peskar, Gen. Counsel, League of Minnesota Cities, St. Paul, amicus curiae seeking reversal.

Heard before TODD, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

## OPINION

WAHL, Justice.

The city of St. Cloud appeals from the June 3, 1977 judgment and order of the Stearns County District Court reducing the special assessment on the property owned by Leo C. Buettner, respondent herein, from $32,678.20 to $26,925.00. The League of Minnesota Cities filed an amicus curiae brief in appellant's support, by order of this court September 9, 1977. The primary issue on appeal is whether the trial court exceeded the permissible scope of review of special assessments. We affirm on that issue.

Mr. Buettner owns a 3.725-acre tract of undeveloped property wholly contained within the city limits of the city of St. Cloud. Residential development was clearly anticipated. A preliminary plat dividing the property into 11 lots has been filed and approved by the city. City subdivision regulations, however, prohibited residential development of land not served by a sewer and water system.

Installation of water and sanitary sewer lines crossing Buettner's property took place in 1975. Following public hearings, the St. Cloud city council adopted the special assessment roll on March 1, 1976. The Buettner property was assessed at the rate of $29.41 per front foot, for a total of $32,678.20. Pursuant to Minn.St. 429.081, Buettner properly appealed the assessment.

The sole issue presented to the district court had to do with the relationship between the value of the "specific benefits" conferred on the property by the project to the amount of the "special assessment" levied. No issue regarding the procedural regularity of the assessment adoption was raised. Any issue regarding the actual proportionate project costs was eliminated by stipulation of counsel during trial. There was no dispute that the reasonably anticipated "highest and best use" of the property was residential, nor was the local character of the improvement seriously in contention.

The measure of "special benefits" was agreed to be the comparative market value of the subject property before and after the project. Petitioner Buettner's evidence included testimony by Jerome Cypher, a certified appraiser. Cypher testified that the 3.275-acre property, lying wholly within the St. Cloud city limits, had a pre-project value of $3,275; that, although zoned for single-family residential development, the area was "poor development-type land," low, treeless, with some granite outcropping; and that his appraisal did not consider the approved preliminary plat or sale prices of comparable unimproved lots. He placed the post-project land value at $27,383 by dividing the property into 12 hypothetical 90-front-foot lots valued at approximately $2,250 per lot and considering the 1975 sale price of $5,850 for a nearby comparable lot with adjustments because of the absence of curb, gutter, and black-topped street at the subject property. Mr. Leo Buettner, who had prior real estate development experience, testified on his own behalf that the pre-project value was $1,000 per acre ($3,275) and that its post-project value increased to $18–19,000. He admitted offering the 11 platted lots for sale at $8,500 per lot, although there had been no purchasers at that price.

On behalf of the city, Mr. Gerald McKinzie, an independent certified appraiser, testified that he initially appraised the property at 26½ cents per square foot or about $3,000 per lot for the unimproved 11 lots shown on the preliminary plat. His appraisal considered the value of an approved preliminary plat, the value of city services (police, fire, school) available to property within the city limits, and sale prices of three comparable unimproved lots, adjusted for lot size, improvements, and recency of sale. After installation of the sewer and water mains, he estimated market value at 52½ cents per square foot, or $6,000 per lot, again relying on adjusted sales data from comparable lots. This time four lots were used, and again adjusted for size, improvements, and recency of sale.

After consideration of the conflicting testimony, the district court entered findings of fact, conclusions of law, and order for judgment reducing the assessment to $26,925. The city's alternative motions for new trial or amended findings were denied June 2, 1977, and judgment entered accordingly.

This case squarely presents the issue of the permissible scope of review of special assessments under Minn.St. 429.081.

A special assessment is a tax, intended to offset the cost of local improvements such as sewer, water and streets, which is selectively imposed on the beneficiaries of such products. Appeal from the levy of the local taxing entity is provided by statute, Minn.St. 429.081:

> "Within 30 days after the adoption of the assessment, any person aggrieved may appeal to the district court by serving notice upon the mayor or clerk of the municipality. The notice shall be filed with the clerk of the district court within ten days after its service. The municipal clerk shall furnish appellant a certified copy of objections filed in the assessment proceedings, the assessment roll or part complained of, and all papers necessary to present the appeal. The appeal shall be

placed upon the calendar of the next general term commencing more than five days after the date of serving the notice and shall be tried as other appeals in such cases. The court shall either affirm the assessment or set it aside and order a reassessment as provided in section 429.-071, subdivision 2. If appellant does not prevail upon the appeal, the costs incurred shall be taxed by the court and judgment entered therefor. All objections to the assessment shall be deemed waived unless presented on such appeal. This section provides the exclusive method of appeal from a special assessment levied pursuant to the chapter."

As is obvious from the face of the statute, the scope of the review of a special assessment to be conducted by the trial court is not specified. It has therefore fallen to the courts to establish the appropriate scope in accordance with accepted legal principles. We have said that a special assessment by a municipality, constituting as it does an exercise of the legislative and executive functions of local government, is entitled to a "presumption of validity." *Nyquist v. Town Center, Crow Wing County,* 312 Minn. 266, 251 N.W.2d 695 (1977). But the strength of that presumption, the manner in which it may be overcome, the range of its applicability, and the conditions under which a trial court may substitute its own judgment for that of the city council are open to question. The language in the numerous opinions of this court dealing with the subject has been unclear and, in fact, directly contradictory.[1] As a result, considerable confusion exists among the members of the bench and bar as to the proper scope of a Section 429.081 review. This case, in which the trial court has weighed conflicting appraisal testimony, substituted its opinion for that of the municipality and ordered not only a reassessment but a specific reduction, provides the opportunity for clarification.

■ Initially, we note that the nature of the issues presented to a trial court reviewing a specific assessment may differ. Specifically, this court has established the rule that a special assessment which exceeds the special benefits to the property, measured by the difference in market value before and after the improvements, is a taking of property without fair compensation in violation of the Fourteenth Amendment. See, e. g., *Southview Country Club v. City of Inver Grove Heights,* 263 N.W.2d 385 (Minn.1978). This is the sole issue that was presented to the trial court in this case.

■ Challenges can be made to a special assessment on grounds other than this constitutional one, however. The proportionate distribution among property owners of the total costs of the improvement, the determination of the area actually benefited by a given construction project, the regularity of the assessment process—all may be contested by a property owner under Minn.St. 429.081.

It is our conclusion that the proper scope of review to be conducted by the trial court depends on which of these issues is presented to it. The fact that different standards are appropriate in different cases or even in

---

1. *Compare Nyquist v. Town Center, Crow Wing County,* 312 Minn. 266, 251 N.W.2d 695, 697 (1977): "This presumption of validity may only be rebutted by the taxpayer upon a clear showing that the assessment does not bear any reasonable relationship to the value of special benefits." [Citing *E. H. Willmus Prop., Inc. v. Village of New Brighton,* 293 Minn. 356, 199 N.W.2d 435 (1972)] *with Carlson-Lang Realty Co. v. City of Windom,* 307 Minn. 368, 240 N.W.2d 517, 519 (1976): "Presumption [of validity may be overcome] * * * by introducing competent evidence that the assessment is greater than the increase in market value of the property due to the improvement." [Again, citing *E. H. Willmus, supra.*]

*Compare, Hartle v. City of Glencoe,* 303 Minn. 262, 266, 226 N.W.2d 914, 918 (1975): "[The levy is a legislative act], presumed to be lawful and correct as to both the property assessed and the amount assessed against it. The courts may interfere with these decisions only when they are clearly erroneous" *with Joint Ind. Sch. D. v. City of Brooklyn Park,* 256 N.W.2d 512, 516 (1977): "[T]he questions of whether the property assessed received any special benefit and whether the assessment exceeds the special benefit are always open for [judicial] review."

different aspects of the same case is one reason the prior cases in this area may appear inconclusive.

■ The levying of special assessments is a legislative function. The city council possesses the discretion ordinarily afforded a legislative body in adopting one among a number of reasonable alternatives. Therefore, in cases where the issue presented to the trial court is the regularity of the assessment process or determinations made within the range of the municipality's legislative discretion, such as what property is benefited and a prorated division of the cost, the city's conclusions may not be upset unless clearly erroneous. See, e. g., *Hartle v. Glencoe*, 203 Minn. 262, 226 N.W.2d 914 (1975).[2]

■ But in a case such as this, where the sole issue presented is whether there has been an unconstitutional taking, the trial court cannot abrogate its duty to uphold constitutional safeguards and defer to the judgment of the taxing authority. Decision must be based upon independent consideration of all the evidence. This is the basis of our opinion in *Carlson-Lang Realty Co. v. City of Windom*, 307 Minn. 368, 240 N.W.2d 517 (1976). The propriety of independent review of this constitutional issue is further indicated by the factors which must be taken into account in making a determination. This is not a question of choosing among a number of reasonable alternatives. It is not a policy decision but a specific finding of fact—do the special benefits exceed the assessment figure? There is no need for a court in such a position to depend upon prior administrative determinations to carry out its constitutional responsibility. See, *Ng Fung Ho v. White*, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938 (1922), and its comparison by Professor Louis Jaffe, Judicial Control of Administrative Action, 646–7, with *St. Joseph Stock Yards v. United States*, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033 (1936).

**2.** It should be noted, however, that the trial court in *Hartle*, as finder of fact, resolved the conflict in testimony as to whether there was an increase in the fair market value of the property involved as a result of the connection

The differing treatment properly afforded when the general reasonableness of a special assessment is challenged, as opposed to when its constitutionality is challenged, is illustrated by a comparison of *Hughes v. Farnsworth*, 137 Minn. 295, 163 N.W. 525, decided in 1917, with *In re Assessment for Paving Concord Street, St. Paul*, 148 Minn. 329, 181 N.W. 859, decided in 1921. In the *Farnsworth* case the question for decision was whether the City of St. Paul was acting within its power when it determined that lots abutting on a portion of a street where there were double street car tracks derived less benefit from the paving of the street than lots fronting on another portion on which there was no car line. The court noted:

"* * * it was determined that the property abutting on each portion of the street was benefited to the extent of the cost of paving that portion. The cost to the city of paving the portion of the street where there were tracks was naturally less than the cost of paving the whole street where there were no tracks." 137 Minn. 296, 163 N.W. 525.

The trial court approved the assessment and upon appeal to this court we affirmed, stating:

"The apportionment of taxes and assessments is a legislative function. * * Unless there is a clear abuse of the legislative prerogative the courts must not interfere. If the question of what property is benefited is a matter upon which reasonable men may differ, then there is no ground for the application of the rule that the board proceeded upon an illegal principle or an erroneous rule of law. As soon as it is admitted that the subject permits of honest difference of opinion, the objection to the conclusion of the board is answered. * * * *" 137 Minn. 297, 163 N.W. 526.

of city sewer and water and whether the increase was greater than the assessment levied, and this court upheld the trial court's finding because there was evidence to support it.

Four years later the *Farnsworth* case was cited to this court when it was called upon to review a judgment of the Ramsey County District Court reducing the amounts assessed upon certain real estate for the paving and improving of Concord Street. The authority of the *Farnsworth* case in this situation was rejected because *Farnsworth* did not involve a "question of assessment in excess of benefits." See, *In re Assessment for Paving Concord Street, St. Paul, supra.* The principle that the apportionment of assessments is a legislative function cannot be extended, the court said, "so as to authorize an unconstitutional taking of private property" 148 Minn. 331, 181 N.W. 860, and continued:

> "It was for the trial court upon the hearing on the application for the confirmation of the assessment to make its determination, having in mind the legislative character of the assessing body, and the weight to be accorded its findings, and the *fundamental constitutional provision inhibiting the taking of private property without just compensation.* We review the finding of the trial court. In our determination of the sufficiency of the evidence to sustain the finding we are guided by the rule, applicable in other cases, that *the evidence must be against the findings to justify a reversal. * * * The trial court makes its finding having in mind the considerations which should influence it in determining the validity of the assessment. We pass upon the sufficiency of the evidence to sustain its finding as in other cases."* (Emphasis supplied.) 148 Minn. 332, 181 N.W. 860.

■ Given this responsibility of the trial court to conduct an independent review when the constitutionality of an assessment is challenged, it is appropriate that we specify the "presumption of validity" then due the city's evidence on special benefits. A presumption makes a prima facie case which is dispositive in the *absence* of evidence; it disappears when adverse evidence on the question of value is introduced. See, *Ryan v. Metropolitan Insurance Company,* 206 Minn. 562, 289 N.W. 557 (1939).

■ There is a factor in addition to the nature of the issue presented which further determines the appropriate scope of the trial court's review in the instant case. Even if a constitutional issue is involved, the challenged determination of a legislative or administrative body may be due judicial deference if the underlying decision-making process is designed to effectively produce a correct or just result or if the decision is informed by considerable expertise. This is the position taken by this court in rate-making cases such as *State v. Tri-State Telephone and Telegraph Co.,* 204 Minn. 516, 284 N.W. 294 (1939). Similarly, if the St. Cloud City Council had instituted an adversary proceeding before an impartial referee and made findings on the specific issue of special benefits, there would be reason for judicial review to be more limited. But that is not the case. Apparently the City Council here initially made no findings whatsoever of special benefits;[3] even were it otherwise its status as an interested party would, without procedural protection, still make the determination suspect. The first presentation of conflicting evidence on the issue was made before the trial court. The role of the trial court can thus be characterized not so much as conducting an independent review as making an initial determination.

■ A final issue should be clarified in light of the above discussion. Minn.St. 429.081 specifies that the trial court shall order a reassessment but provides no authority for the court to order a specific reduction as was done here. If a challenge is to the reasonableness of a legislative as-

---

3. The record is not absolutely clear on this point. However, Gerald McKinzie, the appraiser for the city who testified before the trial court, stated that most of his appraisal work was done in December of 1976—long after the adoption by the city council of the assessment roll on March 1, 1976. There is no indication in the record of any prior assessment by the city. Thus, we draw the obvious inference—that the amount of special benefits, which constitutionally limits the assessment, was not considered by the city until the assessment was challenged in court and the city was obligated to defend it.

sessment, a trial court would have no occasion to order a specific reduction. Even if its initial assessment is unreasonable, there may still be several alternatives properly within the Council's discretion. But if the challenge is constitutional, the trial court's independent finding of special benefit establishes a permissible assessment ceiling, and it would be counterproductive for the trial court to order the assessment reduced without also communicating a specific allowable figure. The trial court here was correct in the scope of the review it conducted, and we affirm its finding of special benefits. But the trial court did go one step too far in ordering a reduction of the assessment rather than communicating its finding to the city council and ordering a reassessment in accordance therewith. Therefore, we must reverse the district court's order on that technical issue alone and remand for a new order in conformity with the statute.

Affirmed in part; reversed in part.