John F. DOSEDEL, et al.,
petitioners, Respondents,

v.

CITY OF HAM LAKE, Appellant.

No. C4–87–767.

Court of Appeals of Minnesota.

Nov. 3, 1987.

Felix A. Mannella, Babcock, Locher, Neilson & Manella, Blaine, for petitioners, respondents.

Wilbur F. Dorn, Jr., Dorn Law Firm, Anoka, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

The City of Ham Lake, Minnesota, appeals from the February 6, 1987, judgment which reversed the city's special assessment upon respondents John F. Dosedel, et al. for road improvements and set a ceiling on the reassessment upon remand. The city contends that its assessment should have received "due judicial deference" upon review by the trial court. In addition, the city claims that the trial court improperly discarded its appraisal in favor of respondents' assessment of the benefit to their land. Finally, the city alleges that it was prejudiced by the trial court's delay in issuing an order and that there should have been a new trial. We affirm.

### FACTS

Twenty years ago the Dosedels purchased two adjacent plots of land on the shore of Coon Lake situated in the City of Ham Lake. Each plot was fifty feet wide and three hundred and sixty feet deep with its southern boundary abutting Interlachen Boulevard.

After a feasibility study had been completed in 1984, the Ham Lake city council held a public hearing and decided to proceed with a project for improving the boulevard and other roads in the vicinity. Before the work commenced, the city's appraiser prepared condemnation reports for lots that abutted the road which was to be widened. A condemnation report was prepared for the Dosedels' land.

In 1985, the stretch of Interlachen Boulevard which ran along the Dosedels' property, previously graveled, was graded and surfaced with bituminous paving. Other sand and gravel roads in the area were improved in a similar manner and a seal coating layer was applied to existing bituminous roads.

To calculate the assessment for each lot, the city used the "buildable unit" allocation formula which comprised the cost of improvements to the access roads plus the cost of improvements to the road on which the individual lots were sited. All two hundred lots in the project were deemed to have received an equal benefit from improvement of two major access roads and consequently the cost was divided equally among them. However, the cost of regrading the minor gravel and sand roads was significantly greater than the cost of seal coating minor blacktop roads in the project. Hence, the lots which abutted regraded roads received a higher assessment than those which did not.

Determination of the assessment rate was based on a formula developed by the city council in previous projects. Lots which abutted a regraded road were assessed $3,358.25, whereas lots abutting seal coated roads were assessed 15% of this figure, or $503.74 per unit. Having made the determination, the city's appraiser approved the special assessment. Finally, the city clerk prepared the assessment roll.

The Dosedels were notified of the $3,358.25 special assessment against each of their lots. After they objected to the assessments, the city's appraiser was directed to assess the benefit to their land. Subsequently, the city held an assessment hearing and affirmed the special assessment. On April 16, 1986, the Dosedels appealed to the district court under Minn. Stat. § 429.081 (1984).

The city's appraiser, who prepared the condemnation reports and approved the special assessment, also prepared the report appraising the benefit to the Dosedels' land, and testified as the city's expert. In preparing the condemnation report, he stated that he reviewed all the lakeshore sales in his files to determine the value of the Dosedels' land for the purposes of taking the easement. The condemnation report valued the land at $11,000 per lot based upon the "buildable unit" approach.

When he testified regarding his approval of the special assessment, the appraiser stated that he did a preliminary view of the Dosedels' property with the intention of providing general information to support the assessment. Although he advised the city that the $3,358.25 special assessment was justified, the appraiser admitted that he knew of no sales of improved property which had increased in value by that amount.

Continuing his testimony, the appraiser stated that after the Dosedels objected to the special assessment, the city requested that the appraiser appraise the benefit of the improvement to the two Dosedel lots. Finally, the appraiser testified that he utilized the "sales comparison" approach to assess the benefit basing his appraisal report on seven property sales in the area. Four of the properties were not lakeshore property. The remaining three properties, designated 1, 2, and 3, were lakeshore properties and had been reviewed earlier for the purpose of the condemnation report. The appraisal for benefit report valued the two lots at $12,500 before improvement and $17,500 after improvement.

The Dosedels testified that their land had increased in value by $600 to $1,000 per lot. The trial court issued an order on February 6, 1987, remanding the special assessment levied against the Dosedels' land for reassessment in an amount not to exceed $1,000 for each lot. The order was accompanied by a detailed memorandum in which the court discussed the standard of review and

gave reasons for rejecting the city's appraisal in favor of the Dosedels' appraisal of benefit.

Regarding the city's appraisal, the memorandum read in relevant part:

[The appraiser] characterized Sale 1 as the best comparable in the "before" situation and Sales 2 and 3 as the best comparables in the "after" situation. Based on his use of those three comparables, [appraiser] is of the opinion that [the Dosedels' lots] each had a market value of $12,500 [per] lot before the paving of Interlachen Blvd. and the access routes, and that their market value increased to $17,500 each after those roadways were paved.

* * * [W]e conclude that [appraiser's] estimate of that increase in market value must be severely discounted, if not rejected altogether.

* * * Sale 1 property * * * does not appear to be a very good comparable. The most critical difference between Sale 1 and [the Dosedels' property] is that Sale 1 may really not be "lakeshore" property: the Sale 1 property is about 550 feet from the main body of Coon Lake and lies on a 100 foot wide "channel" which * * * opens out into the main body of the lake. * * * [In addition] some other differences which, although marked enough, are not as significant (such things as differences in topography, surrounding neighborhoods, front footage, square footage, etc., between Sale 1 and [respondents' lots]).

* * * [T]he differences between the Sale 1 property and [respondents' lots] * * * are significant and * * * detract from the persuasiveness of [appraiser's] sales comparison approach.

* * * [The] paucity of available comparables severely erodes [appraiser's] analysis. That is especially true for the valuation of [respondents' land] in the "before" situation on the basis of only one sale, Sale 1. Even if the Sale 1 property had been a "better" comparable, little can be determined where it is the *only* comparable.

* * * If [the] before valuation has no validity, then neither does [appraiser's] entire "before-after" analysis, even if his "after" valuations are valid.

* * * As to the other sales—Sales 4 through 7—[appraiser] * * * states that those sales * * * "were analyzed for purposes of establishing an indication of the impact on market value of the improvement project." * * *
None of them (Sales 4–7) front on a lake or even the channel of a lake; they are all "interior", non-lakeshore properties. * * * Further, with the exception of Sale 6, all of Sales 4–7 had blacktop roadways in place at the time of the reported sales * * *. Finally, one of these sales (Sale 7) was *not* a reported sale, but an "offering" or listing of that property for sale by the owner.
Accordingly, we conclude that in conducting his "before-after" market analysis, [appraiser] had available to him only one comparable (Sale 1) in the "before" situation. Therefore, we give little or no weight to his opinion that the market value of [the Dosedels' land] increased in market value on account of the improvement project.

Regarding the Dosedels' testimony, the memorandum stated:

Mr. Dosedel indicated that the increase in market value thereby derived by each lot was $1,000; Mrs. Dosedel indicated an increase in market value for each lot of between $600–$1,000. * * * [T]hat opinion evidence by [respondents] is competent evidence as to market value and (in light of our severely discounting [city's] appraisal evidence) may be viewed as the *only* evidence in the case concerning market value.

On appeal the city contends that the *de novo* standard of review was too broad and the trial court should have given the assessment "due judicial deference." In addition, the city claims the trial court wrongly ignored its appraiser's testimony and adopted the Dosedels' appraisal of the benefit to their land. Finally, the city demands a new trial on the basis that the delay between the hearing and the issuance

of the trial court order was prejudicial to their interests.

## ISSUES

1. Was the proper standard for reviewing a special assessment levied by the city one of *de novo* review by the trial court?

2. Does the record support the trial court's decision to remand the special assessment levied by the city?

3. Was the city prejudiced by the nine month delay between the trial and the entry of judgment?

## ANALYSIS

■ A special assessment is a tax, intended to offset the cost of local improvements such as sewer, water and streets, which is selectively imposed upon the beneficiaries. Appeal to the district court from the levy of an assessment is provided by Minn.Stat. § 429.081 (1984).

## I.

■ A special assessment which exceeds the benefit to the property is a taking under the fourteenth amendment and a *de novo* review is warranted. *Buettner v. City of St. Cloud,* 277 N.W.2d 199, 203 (Minn.1979).

The *Buettner* court also held that even if a constitutional issue is involved, the standard for reviewing the challenged special assessment may be "due judicial deference" if the underlying decision-making process is designed to effectively produce a correct or just result or "if the decision is informed by considerable expertise." *Buettner* at 204. Had the city instituted an adversary proceeding and made findings on the specific issue of special benefits, there would be reason for judicial review to be narrowed. *Id.*

The city argues that the fact it claimed its decision "was informed by considerable expertise" prior to rendering its assessment, distinguishes this case from the line of Minnesota cases where *de novo* review has been approved. This argument would permit a party to defeat a constitutional challenge to an assessment merely by

claiming the procedure used was constitutional. Such an argument is without merit.

In addition, appellant claims the "vast experience of the expert relied upon by the city, together with his previous involvement in the condemnation portions of this project, more than established his preliminary report as sufficient to provide the city with the considerable expertise standard required by *Buettner.*" We cannot agree, nor can we distinguish the present case from *Buettner* and its progeny. In *Buettner,* as in this case, the city's appraiser assessed the benefit to the landowner after the assessment had been challenged. *See also Ewert v. City of Winthrop,* 278 N.W. 2d 545 (Minn.1979) (*de novo* review was proper, no before and after market improvement valuation was made prior to the assessment); *Tri-State Land Co. v. City of Shoreview,* 290 N.W.2d 775 (Minn.1980) (the trial court was reversed because it did not afford *de novo* review on appeal from a special assessment; a reassessment hearing had been held, after the landowner's objection, at which the landowner had submitted an appraisal which was reviewed by the city). *See also Lydon v. City of North St. Paul,* 355 N.W.2d 205 (Minn.Ct.App. 1984) and *Mohwinkel v. City of North St. Paul,* 357 N.W.2d 174 (Minn.Ct.App.1984) (upon objection from the landowner, a hearing was held to review the reasonableness of the assessment after which *de novo* review by the district court was affirmed); *Lunderberg v. City of St. Peter,* 398 N.W.2d 579 (Minn.Ct.App.1986), *pet. for rev. granted* (Minn. Feb. 18, 1987) (*de novo* review of an assessment was properly implemented but the trial court was reversed because it improperly ordered reassessment on a specific basis when the property owners had agreed at a city meeting to assessment on an alternative basis).

■ Upon review of the record and the applicable case law, we can find nothing relating to the expertise of appellant's appraiser which would permit us to invoke a scope of review narrower than *de novo.* Furthermore, in none of the cases cited herein was the competency of the city's appraiser a factor in determining the stan-

dard of review. In addition, appellant implemented no procedure here which could enable us to distinguish this case from earlier cases addressing the scope of review. Finally, we note that appellant did not institute an adversary proceeding. Therefore, as in *Buettner*, the first presentation of conflicting evidence on the issue of assessment was made before the trial court. On this basis alone review *de novo* was warranted.

## II.

Appellant next claims the trial court improperly disregarded the appraiser's testimony in favor of testimony of the Dosedels. As fact finder, the trial court was not bound by the testimony of an expert. Further, the trial court is in the best position to assess the credibility of witnesses who appear before it.

The standard by which this court reviews the trial court's determination of a special assessment is stated in *Carlson-Lang Realty Co. v. City of Windom,* 307 Minn. 368, 373, 240 N.W.2d 517, 521 (1976).

> The scope of our review is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment.

*Id.* The evidence must be against the findings to justify a reversal. *In Re Assessment for Paving Concord Street, St. Paul,* 148 Minn. 329, 332, 181 N.W. 859, 860 (1921).

■■■ Minn.Stat. § 429.051 provides that the cost of any improvement "may be assessed upon property benefited by the improvement, based upon the benefits received * * *." *Id.* To determine the value of a special benefit, the taxing authority must consider what increase, if any, there has been in the fair market value of the benefited land. *Nyquist v. The Town of Center,* 312 Minn. 266, 269, 251 N.W.2d 695, 697 (overruled on other grounds by *Downtown Development Project, Marshall City Council Resolution No. 57 v. City of Marshall,* 312 Minn. 266, 281 N.W. 2d 161 (1979)). The increase in market value should be computed by determining what a willing buyer would pay a willing seller for the property before, and then after, the improvement has been completed. *Carlson-Lang Realty Co.* at 369–70, 240 N.W.2d at 519. If the assessment is set higher than the special benefit conferred, it is a taking without compensation to the extent of the excess. *Id.* The duty of this court is to review the record in order to ascertain whether the evidence supports the trial court's findings and whether the findings support the conclusions.

Appellant claims the trial court's decision was based solely on the written report of appellant's appraiser and in disregard of the appraiser's oral testimony. We cannot agree. The transcript and a tape recording of the proceedings were used to assist the trial court with its preparation of findings. Furthermore, the trial court's memoranda demonstrate that the testimony of the appraiser was carefully considered.

Appellant next claims that the trial court should have accepted appellant's appraisal when no expert testimony to rebut was presented by the Dosedels. However, in *Buettner* and subsequent cases, testimony by the property owner and his expert was sufficient to overcome the presumption that the city's assessment was valid. In all the aforementioned cases, the court heard testimony from the city's appraiser, the property owner's appraiser and the property owner as to benefit to the property.

Here the Dosedels did not present testimony on the valuation of the lots. However, they testified that their land had not increased in value by more than $1,000 per lot. As property owners their testimony is competent. *See, e.g., Ewert* at 548. Minnesota case law has never required that only expert testimony is sufficient to overcome the presumption that the city's assessment is valid, and we will not impose such a requirement in this instance.

■■■ The trial court discredited appellant's appraisal because the seven comparables used were inadequate in number and quality. Four comparables were discount-

ed because they were not situated on the lakeshore. Property 1, described by the appraiser as the best "before" improvement comparable, was suspect because it was on a channel rather than on the lakeshore and did not compare well with the Dosedels' property in elevation or in size. Discrediting property 1 eliminated the only "before" improvement comparable. A thorough review of the transcript and all the documents in the record convinces us that the trial court's findings are adequately supported.

We additionally note that the condemnation report, prepared by appellant's appraiser only a short time before the appraisal for benefit, was also before the trial court. Although not addressed specifically by the trial court, we agree with the Dosedels' observation at trial and upon appeal that properties 1, 2, and 3, used as comparables to prepare both the condemnation and assessment reports, were valued very differently in the two reports. Utilizing all three comparables, the Dosedels' properties were valued at $11,000.00 each in the condemnation report. That valuation was $12,500 each in the appraisal for benefit report, however, utilizing only property 1. An "after improvement" value of $17,500 each was reached by utilizing comparables 2 and 3. Appellant's appraiser testified the difference in values for the condemnation and benefit reports resulted from use of a different basis for calculation. The trial court apparently was unconvinced by this explanation. Our review of the record satisfies us that no credible explanation was given by the appraiser for the variation in his valuations. Finally, we note that although appellant challenges the credibility of the Dosedels' assessment of the benefit to their property, appellant provided no transcript of the Dosedels' testimony to us for review. We must, therefore, assume that the record would support the trial court's determination of the competency of the Dosedels' testimony.

## III.

Lastly, appellant contends that the nine month delay between the hearing and the issuance of the trial court's decision was prejudicial to appellant's interests and warrants a new trial. "Whether to grant a new trial rests solely in the discretion of the trial court, and its decision will only be reversed for clear abuse of that discretion." *Larson v. Hills Heating and Refrigeration of Bemidji, Inc.*, 400 N.W.2d 777, 782 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 17, 1987).

While prompt resolution of pending cases is always a desirable goal, appellant makes no attempt to explain how the delay complained of here was, in fact, prejudicial. The trial court found that there was no possibility of prejudice to appellant during the delay. We agree. The Dosedels point out that throughout the nine month period, installments on the $6,716.50 assessment were paid by them. We have no indication that the Dosedels have failed to continue those installments during the period of this appeal. Appellant, therefore, has received the benefit it would have received had the trial court affirmed the special assessment. Because appellant has demonstrated no unfair prejudice suffered because of the delay, we can find no basis for a new trial, and certainly no error in the trial court's refusal to grant one.

## DECISION

The *de novo* standard was properly utilized by the trial court to review the city's special assessment, where the city's determination was not informed by "considerable expertise." The trial court did not err in remanding the special assessment with instructions that the reassessment be no higher than respondents' appraisal. Appellant did not show that the delay between the hearing and the issuance of the trial court's order resulted in prejudice warranting a new trial.

Affirmed.