*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0366**

Archie J. Pavek,
Trustee of the Archie J. Pavek
Revocable Trust,
Respondent,

vs.

City of Prior Lake,
Appellant

**Filed December 14, 2015
Affirmed
Worke, Judge**

Scott County District Court
File No. 70-CV-13-12697

Christopher A. Neisen, Wornson, Goggins, Zard, Neisen, Morris & King, PC, New Prague, Minnesota (for respondent)

Joseph A. Nilan, Daniel A. Ellerbrock, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, Minnesota (for appellant)

Susan L. Naughton, League of Minnesota Cities, St. Paul, Minnesota (for amicus curiae League of Minnesota Cities)

Considered and decided by Hooten, Presiding Judge; Worke, Judge; and Kalitowski, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WORKE**, Judge

In this special-assessment dispute, appellant argues that the district court erred by setting aside the original $76,479 assessment and determining that respondent's property received a special benefit of only $24,829. We affirm.

**FACTS**

On May 28, 2013, appellant City of Prior Lake passed Resolution 13-065 and awarded a construction contract for the Welcome Industrial Improvement Project (Welcome Avenue project). Prior Lake implemented the Welcome Avenue project, in part, to improve Welcome Avenue by widening and paving the road, provide municipal water and sewer services to properties in the area, and alleviate flooding in Markley Lake by building a pond to collect run-off from surrounding properties.

Respondent Archie J. Pavek, as the trustee of the Archie J. Pavek Revocable Trust, owns a nearly five-acre parcel in Prior Lake. Pavek's property is zoned "industrial" and located between Industrial Circle on the west and Welcome Avenue on the east. Both roads travel north/south. A gate borders the east side of Pavek's property.

Pavek's property contains three buildings on its western half. Pavek operates a machine shop and wind turbine company. Pavek's employees, along with other visitors, access Pavek's property from the west on Industrial Circle. Pavek testified that although the property can be accessed from Welcome Avenue, it has been done so just once. Pavek's property also contains an underground culvert that runs north/south across the entire parcel. Water that accumulates on Pavek's property, and certain properties to the

2

south, drains into the culvert and catch basin and travels underground to Markley Lake. The culvert and catch basin are non-conforming uses that are grandfathered in. Any development on Pavek's property would require him to bring the property into compliance with the city's stormwater zoning requirements.

In May 2013, Prior Lake adopted special assessments against property owners to help fund the Welcome Avenue project. Pavek received assessments for street improvements and the stormwater pond that totaled $76,479. Pavek appealed Prior Lake's assessment. During a bench trial, the district court heard testimony from two appraisers, Cal Haasken and Paul Gleason.

Haasken completed an appraisal for Pavek and concluded that "general industrial" is the highest and best use of Pavek's property. Haasken also stated that it is not economically viable to subdivide Pavek's property. Haasken utilized an income approach, a market-data approach, and a replacement-cost approach to determine the market value of Pavek's property. Haasken considered both the land and the improvements on Pavek's property. Haasken concluded that the Welcome Avenue project did not increase the value of Pavek's property.

Gleason completed an appraisal for Prior Lake and concluded that "light industrial" is the highest and best use of Pavek's property. Gleason concluded that the Welcome Avenue project did not affect the value of the improvements on Pavek's property. He stated that only Pavek's land benefited from the Welcome Avenue project. Gleason used a direct-sales-comparison approach to estimate the value of Pavek's land

3

before and after the Welcome Avenue project. Gleason concluded that the Welcome Avenue project increased the market value of Pavek's property by $103,000.

Pavek testified that the Welcome Avenue project did not benefit his property because he uses only the Industrial Circle access point, and the project, as it relates to water flow, does not benefit his property. Pavek stated that if he subdivided and sold a 1.5-acre parcel on the eastern border, the new owner could benefit from the Welcome Avenue project.

On August 22, 2014, the district court ordered the assessment against Pavek's property to be set aside. The district court found Haasken's appraisal persuasive because he determined the market value of the land and buildings, not the land only. The district court, however, determined that 1.5 acres on the eastern border of Pavek's property could benefit from the Welcome Avenue project if developed. The district court ordered Prior Lake to reassess Pavek's property in an amount not to exceed $24,829. Prior Lake moved for a new trial or for an amended order. The district court denied Prior Lake's motion. This appeal follows.

**D E C I S I O N**

"A special assessment is a tax, intended to offset the cost of local improvements such as sewer, water and streets, which is selectively imposed upon the beneficiaries." *Dosedel v. City of Ham Lake*, 414 N.W.2d 751, 755 (Minn. App. 1987). A city's power to impose special assessments is limited in three ways: (1) the land must receive a special benefit from the new improvement, (2) the assessment must be uniform upon the same class of property, and (3) the assessment may not exceed the special benefit. *Carlson-*

4

*Lang Realty Co. v. City of Windom*, 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976). An assessment set higher than the special benefit conferred constitutes a taking without compensation to the extent of the excess. *Id.* at 370, 240 N.W.2d at 519.

A "[s]pecial benefit is measured by the increase in the market value of the land owing to the improvement." *Id.* at 369, 240 N.W.2d at 519. An appraiser determines market value by identifying "what a willing buyer would pay a willing seller for the property before, and then after, the improvement." *Id.* "[M]arket value may be calculated on the highest and best use of the land." *Anderson v. City of Bemidji*, 295 N.W.2d 555, 560 (Minn. 1980). The subject property's present use does not control in determining special benefits received. *Vill. of Edina v. Joseph*, 264 Minn. 84, 95, 119 N.W.2d 809, 817 (1962).

After an assessment is adopted, an aggrieved person, who makes a timely objection, may appeal to the district court. Minn. Stat. § 429.081 (2014). At the district court, "the city is presumed to have set the assessment legally, and thus introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed [the] special benefit." *Carlson-Lang Realty*, 307 Minn. at 370, 240 N.W.2d at 519. A landowner overcomes the presumption by introducing competent evidence that the assessment is greater than the increase in market value of the property due to the improvement. *Id.* "When evidence is also received that the assessment is equal to or less than the increased market value, the district court must make a factual determination." *Id.*, 240 N.W.2d at 519–20; *see Hartle v. City of Glencoe*, 303 Minn. 262, 266–67, 226

5

N.W.2d 914, 918 (1975) (stating that the factfinder resolves any conflict in testimony as to whether an increase in market value exceeds the amount of an assessment).

***Standard of Review***

Upon review, this court conducts "a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment." *Carlson-Lang Realty*, 307 Minn. at 373, 240 N.W.2d at 521 (citing *G.C. Kohlmier, Inc. v. Albin*, 257 Minn. 436, 101 N.W.2d 909 (1960)). Testimony is considered in the light most favorable to the prevailing party, and the district court's findings "will not be reversed on appeal unless they are manifestly contrary to the evidence." *G.C. Kohlmier, Inc.*, 257 Minn. at 442–43, 101 N.W.2d at 914; *see Nelson v. City of St. Paul*, 256 N.W.2d 639, 640 (Minn. 1977) (holding that the district court properly applied the standards used for reviewing assessments and that "[t]he findings by the [district] court are not clearly erroneous").

Prior Lake asserts that we apply a de novo standard of review, citing *Ewert v. City of Winthrop*, 278 N.W.2d 545 (Minn. 1979) in support. But *Ewert* discussed the district court's de novo standard of review, and cited *Carlson-Lang Realty* for this court's standard of review. 278 N.W.2d at 548–49.

In *Ewert*, the supreme court stated that after both parties present evidence on whether a property's market value changed, "the *district court* [must] make a factual determination." *Id.* at 548 (emphasis added). The court further stated that "[if] the landowner maintains that the assessment is excessive, this determination is to be a de novo one." *Id.* The supreme court cited *Buettner v. City of St. Cloud*, 277 N.W.2d 199

6

(Minn. 1979). *Id.* In *Buettner*, the supreme court stated: "[W]he[n] the sole issue presented is whether there has been an unconstitutional taking, the [*district*] *court* cannot abrogate its duty to uphold constitutional safeguards and defer to the judgment of the taxing authority. Decision must be based upon independent consideration of all the evidence." 277 N.W.2d at 203 (emphasis added).

The supreme court's reasoning in *Buettner* and *Ewert* established that, for special-assessment disputes, the de novo standard of review applies in district court proceedings. *Carlson-Lang Realty* established that we carefully examine whether the evidence fairly supports the district court's findings and whether those findings support its conclusions of law and judgment. 307 Minn. at 373, 240 N.W.2d at 521.

### *The Evidence Fairly Supports the District Court's Findings*

Prior Lake argues that the district court erred by concluding that Pavek's property received a special benefit of only $24,829. We must first determine whether the evidence fairly supports the district court's findings. *Id.*

Haasken testified that he used three approaches to determine the value of Pavek's property. Haasken testified that the highest and best use of Pavek's property, both before and after the Welcome Avenue project, was a five-acre industrial site with existing buildings. Gleason agreed that this is the highest and best use of Pavek's property. Haasken appraised Pavek's property in accordance with the Uniform Standards of Professional Appraisal Practice, which explains the processes and forms that must be complied with during an appraisal. Haasken determined that the value of Pavek's property, both before and after the Welcome Avenue project, was $1,200,000.

7

The district court found Haasken's appraisal more persuasive because he determined the market value of the land and buildings. The district court recognized that Haasken gave opinions on the market value of Pavek's property both before and after the Welcome Avenue project. The district court accepted Haasken's conclusion that the highest and best use of Pavek's property was industrial, and that a buyer would pay $1,200,000 for the property prior to and after the Welcome Avenue project. Finally, based on Pavek's testimony that 1.5 acres of the property could benefit from the Welcome Avenue project, the district court found that Pavek's property received a special benefit of up to $24,829. Thus, the district court's findings are not clearly erroneous.

Prior Lake argues that the district court "incorrectly criticized" Gleason's appraisal for focusing on the value of the land separate from its improvements. We do not agree. "[A]s long as a valuation method fairly approximates the increase in a parcel's market value, it may be used in an assessment proceeding." *DeSutter v. Twp. of Helena*, 489 N.W.2d 236, 238 (Minn. App. 1992), *review denied* (Minn. Sept. 30, 1992). "[M]arket value may be calculated on the highest and best use of the land." *Anderson*, 295 N.W.2d at 560. When evidence conflicts as to whether a special benefit exists, the district court must make a factual determination. *Carlson-Lang Realty*, 307 Minn. at 370, 240 N.W.2d at 519–20. Factual determinations will not be set aside unless they are clearly erroneous. *Nelson*, 256 N.W.2d at 640.

Haasken evaluated the market value of Pavek's property based on its highest and best use. Haasken considered both the land and its improvements and concluded that the

8

Welcome Avenue project did not affect the property's market value. Haasken's opinion conflicted with Gleason's opinion, and the district court found Haasken's appraisal more persuasive. The weight and credibility given to each appraiser's opinion, however, was an issue for the district court to determine. *See DeSutter*, 489 N.W.2d at 240. Further, whether the market value of Pavek's property increased is a question of fact that will not be set aside unless it is clearly erroneous. *See Nelson*, 256 N.W.2d at 640. Thus, the district court did not err by finding Haasken's appraisal more persuasive.

Prior Lake argues that we should rely on *Holden v. City of Eagan*, 393 N.W.2d 526 (Minn. App. 1986). In *Holden*, the subject property was used for farming and zoned agricultural, however, it was designated R-III (medium density townhome) under the city's comprehensive land-use plan. 393 N.W.2d at 527. Appraisers for both parties concluded that the highest and best use, before and after improvements, was R-III and that the value of the property's buildings was not affected by the improvements. *Id.* at 529. The district court, however, found that the highest and best use was agricultural and reduced the value of three assessments, discounting the city's appraisal, in part, because the appraiser did not take into account the buildings on the land. *Id.* at 528. This court reversed the district court's decision. *Id.* at 529.

Despite similarities, the *Holden* decision does not control here. We did not reverse the district court's decision in *Holden* simply because the district court discredited the city's appraisal for not considering the structures on the Holdens' land. *Id.* at 528–29. Rather, this court reversed the district court's decision for two reasons: (1) there was insufficient evidence to find that the highest and best use of the property before

9

improvements was agricultural; and (2) the district court erred in finding that a building's decrease in value upon development of the property into its highest and best use reduced the benefit derived from the improvements. *Id.*

Prior Lake also argues that the district court improperly relied upon the present use of Pavek's property in determining whether it received a special benefit. We are not persuaded. The district court adopted Haasken's appraisal, which determined the highest and best use of the property to be industrial while using the existing buildings. Additionally, the district court recognized that both appraisers believed the "highest and best use" to be industrial. Finally, when adjusting the special-assessment amount, the district court found that 1.5 acres could be developed as "light industrial." The present use of Pavek's property, coincidentally, happens to be its highest and best use. Thus, the district court relied on the highest and best use of Pavek's property.

Prior Lake also argues that the district court erred by excluding portions of Pavek's property from assessment. Prior Lake relies on *Gibbish v. Vill. of Burnsville*, 294 Minn. 318, 200 N.W.2d 310 (1972). But this case does not support Prior Lake's position. In *Gibbish*, the district court set aside assessments that were imposed against two separate parcels of land. 294 Minn. at 318–19, 200 N.W.2d at 312. The district court found the assessments invalid because portions of each parcel were not suitable for development. *Id.* at 321, 200 N.W.2d at 313. The supreme court held:

> Evidence as to the effect of an assessment on portions of an assessed parcel is material to the question of market value of the entire parcel, but cannot be used to defeat an assessment when the increase in market value of the entire

10

> parcel by reason of the improvement exceeds the cost of the improvement.

*Id.* at 318, 200 N.W.2d at 311. The supreme court also stated that the district court should have made findings as to the value of the subject property both before and after the improvement. *Id.* at 322–23, 200 N.W.2d at 314.

Here, unlike *Gibbish*, the district court did not set aside the assessment because portions of Pavek's property were not suitable for development. Rather, the district court found Haasken's appraisal and Pavek's testimony persuasive. The district court found that both appraisers agreed that the highest and best use of Pavek's property was industrial, which is the property's present use. Additionally, based on Pavek's testimony that a portion of his property could benefit from the Welcome Avenue project, the district court found that the property received a special benefit in the amount of $24,829.

Finally, Prior Lake argues that a district court must conduct an analysis of the subject property's market value both before and after the improvements are implemented. Minnesota courts have recognized this requirement. *See Edward Kraemer & Sons, Inc., v. Village of Burnsville (In re Vill. of Burnsville)*, 310 Minn. 32, 40–41, 245 N.W.2d 445, 450–51 (1976) (remanding because the district court did not make findings on central issue of improvement's effect on market value ); *Peterson v. City of Inver Grove Heights*, 345 N.W.2d 274, 277 (Minn. App. 1984) ("[T]he [district] court's failure to make findings on the before and after market value of respondent's property would have been a separate and sufficient ground for reversing and remanding this case.").

11

Here, the district court adopted Haasken's appraisal, which concluded that the market value of Pavek's property prior to the Welcome Avenue project was $1,200,000. The district court also found that Pavek's property received a special benefit of $24,829. A "[s]pecial benefit is measured by the increase in the market value of the land owing to the improvement." *Carlson-Lang Realty*, 307 Minn. at 369, 240 N.W.2d at 519. Thus, the district court found that the property's market value increased by $24,829 as a result of the Welcome Avenue project.

Considered in a light most favorable to Pavek, the district court's findings are not clearly erroneous because the evidence fairly supports the district court's findings. Additionally, the district court's findings fairly support its conclusions of law and judgment.

**Affirmed.**