Gilbert DeSUTTER, et al., Respondents,

v.

**TOWNSHIP OF HELENA, Appellant.**

No. C1–92–14.

Court of Appeals of Minnesota.

July 21, 1992.

Review Denied Sept. 30, 1992.

Norbert B. Traxler, New Prague, for respondents.

Robert A. Nicklaus, Chaska, for appellant.

Considered and decided by KLAPHAKE, P.J., and RANDALL, and SCHULTZ,* JJ.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

## OPINION

RANDALL, Judge.

Respondent taxpayers appealed to district court the special assessments made by appellant Township of Helena for road improvements. The trial court rejected appellant's appraisal method, and required reassessment of respondents' properties in the amounts described in respondents' appraisals. The trial court awarded respondents costs and expert witness fees. The trial court denied appellant's motion for a new trial or amended findings, but did reduce the expert witness fee award to respondents.

## FACTS

During 1990 appellant widened and blacktopped a gravel road in front of residential properties owned by respondents. Alleging the resulting special assessments exceeded benefits conferred on their properties, respondents appealed to district court.

Appellant's calculations and comparables attempted to value respondents' properties as if vacant, without considering the existing residences. Respondents' calculations and comparables, which produced lower estimated benefits, valued the properties as land including the existing structures which were residential homes. Respondents used both replacement cost and market value approach. Both sides agreed the highest and best use of the properties was residential. Experts for both sides testified to faults in the other's assumptions, calculations, and calculation methods.

The trial court found both parties' valuation methods (with and without consideration of existing homes) valid. But the trial court then went on to reject appellant's appraisals because it found the second step of appellant's valuation method internally inconsistent. Specifically, the same comparables were used in two steps but with different adjustments and producing different values. The trial court could not find a reasonable reconciliation. While the trial court found errors in respondent's market value appraisals (and rejected a set of sales

of comparable properties because it was between family members and might not have been at "arms length"), it specifically indicated those errors were not fatal to the appraisals and the trial court adopted respondents' market value calculations.

Because appellant's assessments against the properties were greater than the benefits conferred on respondents' properties as calculated by respondents' market value approach, appellant's appraisals were found excessive. The trial court set aside the original assessments and required reassessment in an amount no greater than the benefits estimated by respondents' market value appraisals.

After trial, respondents taxed $6264.75 in costs and disbursements including $5500 in appraisal fees and $600 in expert witness fees. While denying appellant's motion for a new trial or amended findings, the trial court reduced respondent's costs and disbursements to $5964.75 by excluding $300 of expert witness fees. The trial court did not reduce any part of the appraiser's fee.

Appellant now alleges respondents' appraisals are defective because they included consideration of the houses on the lots in question, and because the evidence was not sufficient to support the appraisals. Appellant also challenges the "appraiser's fee" as excessive.

## ISSUES

1. Did the trial court err by adopting respondents' appraisals?

2. Is the evidence sufficient to support respondents' appraisals?

3. Did the trial court abuse its discretion by awarding costs?

## ANALYSIS

### I.

*Special benefit appraisals*

Regarding assessments,

any method resulting in a fair approximation of the increase in market value for each benefitted parcel may be used. A method which on its face appears to be a fair approximation will be presumed

valid, with the burden resting upon the objector to show its invalidity.

*Continental Sales & Equip. Co. v. Town of Stuntz,* 257 N.W.2d 546, 550 (Minn. 1977); *see also, Village of Edina v. Joseph,* 264 Minn. 84, 102, 119 N.W.2d 809, 821 (1962) (assessment affirmed where record did not establish it was "without integrity and faithful consideration by the municipal authorities or that it resulted from the adoption of inapplicable rules of law"). Appellant alleges respondents' "[c]onsideration of [the] structural components was contrary to the standard of Professional Appraisal Practice and contrary to Minnesota case law." We disagree.

## A. *Existing Law*

■ The supreme court stated:

It is well established * * * that the relative benefits from an improvement are calculated on the market value of the land before and after the improvement and that the market value may be calculated on the highest and best use of the land.

*Anderson v. City of Bemidji,* 295 N.W.2d 555, 560 (Minn.1980); *see also Holden v. City of Eagan,* 393 N.W.2d 526, 528 (Minn. App.1986). As noted, *"any method* resulting in a fair approximation of the increase in market value for each benefited parcel may be used." *Stuntz,* 257 N.W.2d at 550 (emphasis added). Thus, as long as a valuation method fairly approximates the increase in a parcel's market value, it may be used in an assessment proceeding.

Appellant cites no case law holding it is inappropriate to consider structures on land when determining the amount of bene-

fits attributable to a public improvement.[1] The argument is inconsistent with prior case law. *See Schumacher v. City of Excelsior,* 427 N.W.2d 235, 237 (Minn.1988) (supreme court reviews record to determine whether "the improvements resulted in no increase in market value *to the apartment complex"*) (emphasis added); *Stuntz,* 257 N.W.2d at 549–51 (front-foot assessments against property not discounted because property was developed); *Joseph,* 264 Minn. at 101–02, 119 N.W.2d at 820–21 (where supreme court reverses trial court's vacation of assessments and remands for reentry of assessments there was no mention of discounting assessments made against developed properties). Logic tells us it is not error to consider family residences on a lot in assessing the before and after market value when both sides agree the highest and best use of that lot is a family residence.

## B. *Real Estate Practice*

To support its argument that consideration of the structures on respondents' properties was inconsistent with real estate practice, appellant cites Rule 1–3 of the Uniform Standards of Real Estate Appraisals. That rule states:

In developing a real property appraisal, an appraiser must observe the following appraisal guideline:

\* \* \* \* \* \*

(b) recognize that land is appraised as though vacant and available for development to its highest and best use and that the appraisal of improvements is based on their actual contribution to the site.

1. Appellant's citation of *Carlson–Lang Realty Co. v. City of Windom,* 307 Minn. 368, 240 N.W.2d 517 (1976), to argue "[s]pecial benefit is measured by the increase in the market value of the land owing to the improvement," is misplaced. Because that case involved only vacant lots, there was nothing to improve there but the land. Appellant's citation of *In re Special Assessment for Maplewood Public Project No. 78–10,* 358 N.W.2d 106 (Minn.App.1984) is also dubious. There, in our "facts" section, we noted the expert testified to a property's fair market value increase excluding existing structures. The "analysis" portion of the opinion, however, did not mention this fact. Thus, while *Project No.*

*78–10* might indirectly support the trial court's ruling that consideration of structures is not mandatory, it cannot be said to forbid consideration of structures. Finally, appellant's citation of *Joseph,* 264 Minn. at 99, 119 N.W.2d at 819, and *Holden,* 393 N.W.2d at 528, for the proposition that present use is not controlling in determining whether an improvement produced benefits is also misplaced. In *Holden,* 393 N.W.2d at 529, the property was not being used at its highest and best use, and in *Joseph,* 264 Minn. at 89, 119 N.W.2d at 813, it was admitted the property would have been benefitted had it been used for a different purpose.

But we note the associated comment states:

> *This guideline may be modified* to reflect that, in various legal and practical situations, a site may have a contributory value that differs from the value as if vacant.

(Emphasis added.)

■ Here, the parties agree the highest and best use of respondents' properties is single family residential real estate. The parties agree the properties are presently being used for that purpose. Reasonably, if the appraisal's purpose is to determine the assessable increase in the value of respondents' properties, and if that increase is to be determined on the properties' highest and best use, if the highest and best use is residential, an exception to the "appraise as vacant" rule exists.

The trial court ultimately preferred respondents' calculations over appellant's. Here, the trial court found appellant improperly implemented its otherwise valid theory for calculating the benefits the project conferred on respondents' properties. Appellant argues that under *Joseph,* 264 Minn. at 98, 119 N.W.2d at 818, exact calculation of benefits is not required. To the extent this is an attempt by appellant to save its appraisals by finding sufficient flexibility in the assessment process to allow for the inconsistencies noted by the trial court, the argument is unpersuasive. Initially, it concedes the existence of the inconsistencies. Secondly, while exact calculation is not necessary for valid benefit determination,

> a special assessment which exceeds the special benefits to the property, measured by the difference in market value before and after the improvements, is a taking of property without fair compensation in violation of the Fourteenth Amendment.

This reasoning is consistent with the real estate community's use of the terms "special assessment" and "real estate." A "special assessment" is

> [a] charge made by government against *real estate* to defray the cost of making a public improvement adjacent to the property which, while of general community benefit, is of special benefit to the property so assessed.

American Institute of Real Estate Appraisers & Society of Real Estate Appraisers, *Real Estate Appraisal Terminology* 226 (Revised Ed.1981) (emphasis added). "Real Estate" is "[t]he physical land and appurtenances, *including structures affixed thereto.*" *Id.* at 200 (emphasis added). *See also* Minn.Stat. § 272.03, subd. 1(a) (Supp.1991) (for tax purposes "real property" includes land and structures thereupon).

On these facts, the trial court properly considered respondents' residences in evaluating the change in the value of their residential property.

## II.

*Sufficiency of the evidence*

For several reasons appellant challenges the sufficiency of the evidence to support the trial court's adoption of respondents' appraisals.

> The standard by which this court reviews the trial court's determination of a special assessment is stated in *Carlson–Lang:*

> > The scope of our review is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment.

> The evidence must be against the findings to justify a reversal.

*Dosedel v. City of Ham Lake,* 414 N.W.2d 751, 756 (Minn.App.1987) (quoting *Carlson–Lang,* 307 Minn. at 373, 240 N.W.2d at 521; other citation omitted).

■ A. Appellant alleges the testimony of respondents' expert was fatally defective because the appraiser did not demonstrate why various houses received greater benefits that others. Appellant did not cross-examine on the testimony he says is defective. Appellant now claims that "in order to preserve its objection" to respondents' expert's testimony, it made a deci-

sion not to cross-examine respondents' expert on this issue. Without commenting on trial tactics, we do find the issue preserved, but we do not find the testimony defective. Under Minn.R.Evid. 702 experts may testify in the form of an opinion and under Rule 704 that opinion may go to the ultimate issue for decision. Pursuant to 703(a) when the basis for an expert's opinion is of a type "reasonably relied on by experts in the particular field * * * the facts and data [forming the basis for the expert's opinion] need not be admissible in evidence." There is no allegation here that respondents' expert appraisals were based on unusual information.

■ B. Appellant challenges the differences in respondents' expert appraisals of certain properties, noting they involved similar land but were given different assessments. We accept respondents' expert's explanation of the different appraisals. His explanation had a reasonable basis, including his noting that two lots had homes, one had a cabin, and one was not developed.

C. Appellant argues that under *Holden*, the loss or gain in a structure's value is immaterial to whether a property was benefitted by a project. We disagree. In *Holden*, a property's highest and best use was residential, but it was used for farm purposes. Because the improvement would have benefitted residences, but did not benefit the value of the agricultural buildings, the trial court reduced the benefits attributed to the property. This court reversed:

> Since there was no difference in the value the buildings derived from the installations of the improvements, * * * assuming a highest and best use of [the land], the trial court incorrectly determined that the benefit should be reduced.

*Holden*, 393 N.W.2d at 529. *Holden* stands for the proposition that if a property in its highest and best use would be benefitted by an improvement, those benefits are not necessarily to be ignored because the property's present use is not benefitted by the improvement.

D. Without more, appellant also claimed the trial court owed its assessment determi-

nation deference because the assessments were based upon "considerable expertise." This argument was rejected in *Dosedel*, 414 N.W.2d at 755.

E. Appellant alleges various adjustment errors in the "comparables" used in respondents' expert appraisals. Despite appellant's expert testifying to these errors at trial, the trial court found:

> The market approach comparisons in [respondents'] appraisal are *thorough and detailed* and the few errors in adjustment pointed out by [appellant's expert] have little or no impact on the values determined in this section of the appraisal.

(Emphasis added). Because the trial court originally ruled against appellant on this issue in its order and subsequently rejected the same attack on the weight and credibility of respondents' expert appraisals in the denial of appellant's new trial motion, appellant's argument has been rejected twice. Where a tax assessor's expert valuations were attacked, the supreme court stated:

> The weight and credibility of the testimony, including that of the expert witnesses, was for the trier of fact to determine.

*Alstores Realty, Inc. v. State*, 286 Minn. 343, 353, 176 N.W.2d 112, 118 (1970). We will not reassess the experts' opinions on appeal.

### III.

#### Costs and disbursements

■ Originally, respondents filed a Bill of Costs Disbursements and Notice of Taxation for $6264.75 including $5500 in appraisal fees and $600 in expert witness fees. Prior to the hearing on appellant's motion for a new trial, appellant challenged the extent of the appraiser's fee because part of respondents' appraisal was found unreliable by the trial court. After the hearing, appellant again challenged the amounts in a letter brief. In its order denying appellant's motion for a new trial or amended findings, the trial court reduced the award of expert witness fees by half ($300) noting respondents' expert testified for only half a day, but did not alter

the appraiser's fee. Citing *Mohwinkel v. City of North St. Paul,* 357 N.W.2d 174 (Minn.App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1985), appellant challenges the appraisal fee as excessive and unreasonable.

Generally,

[i]t should be noted that the award of costs is discretionary with the trial court, and in the absence of abuse of discretion, its decision will be respected.

*In re Village of Burnsville Assessments for Improvement No. 70TS–8,* 287 N.W.2d 375, 377 (Minn.1979). The award is discretionary and appellant's argument was made to the trial court twice. The trial court was aware of, but not persuaded by, appellant's allegations. Further, appellant's reference to *Mohwinkel* to argue the $5500 appraiser's fee was unreasonable is misplaced. There, twenty two separate assessment appeals were consolidated in the trial court and the prevailing appellants were awarded costs and disbursements including $1600 in expert witness fees ($75 each). In this court, the city argued the trial court erred in exceeding the $300 per day limit on expert witness fees established under Rule 11 of the District Court Code of Rules. This court, however, affirmed upon examination of Rule 11 and Minn.Stat. § 357.25 (Supp.1983) which addresses allowance of expert witness fees.

The trial court considered the proper factors and reasonably awarded costs and disbursements.

## DECISION

Benefit assessment appraisals, depending on the facts, may consider both the land and the structures thereon; at times that approach may be the most reasonable.

The evidence was sufficient to support respondents' appraisals.

The trial court did not abuse its discretion in awarding costs and disbursements.

Affirmed.