*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1522**

Prior Lake Mini Storage, Inc.,
Respondent,

vs.

City of Prior Lake,
Appellant.

**Filed June 22, 2015
Affirmed
Larkin, Judge**

Scott County District Court
File No. 70-CV-13-11693

Phillip R. Krass, Rachel R. Lorentz, Malkerson Gunn Martin LLP, Minneapolis, Minnesota (for respondent)

Joseph A. Nilan, Daniel A. Ellerbrock, Gregerson Rosow Johnson & Nilan, Ltd., Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Reilly, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant-city challenges the district court's finding that the increased market value of respondent's property resulting from the city's improvements is no more than $52,000. We affirm.

## FACTS

Appellant City of Prior Lake initiated a project to improve and extend a road and to provide sanitary sewer, storm sewer, and water services to an area that included 18 unserviced properties. The city was motivated by a concern that wells and septic systems already on the properties could contaminate the city's well head and impact the city's water supply, and by a concern that potential flooding of a nearby lake had negative impact on development. Respondent Prior Lake Mini Storage Inc. (Mini Storage) owns one of the 18 properties, which contains 11 buildings used in its mini-storage business.

After deciding to assess a portion of the project costs to the properties, the city hired Paul Gleason, a certified general real property appraiser, to appraise Mini Storage's property and estimate the increased market value resulting from the project. Gleason concluded that the project increased the value of Mini Storage's property by $375,000. The Prior Lake city council adopted an assessment roll that included an assessment against Mini Storage's property in the amount of $375,000.[1]

Mini Storage appealed the assessment to district court, arguing, among other things, that the property "has not received a special benefit in an amount at least equal to

[1] The assessments of the other 17 properties ranged from $9,181 to $84,963.

2

the special assessment levied against the property." The case was tried to the court. The city did not defend its $375,000 assessment at trial. Instead, it offered a second appraisal, which Gleason completed nine weeks after his first appraisal. In the second appraisal, Gleason concluded that the city's project increased Mini Storage's property value by $329,000. Gleason decreased the estimate because the asking prices for several lots listed in a nearby light-industrial park had been reduced. Mini Storage offered an appraisal conducted by Ellen Herman, who concluded that the city's project increased the market value of Mini Storage's property by $52,000.

The district court rejected the city's appraisal, reasoning that it is based on unrealistic assumptions. The district court found Mini Storage's appraisal credible. The district court set aside the $375,000 assessment and ordered the city to reassess the property in an amount not to exceed $52,000. The city moved for a new trial, and the district court denied the city's motion. The city appeals.

## DECISION

"A special assessment is a tax, intended to offset the cost of local improvements such as sewer, water and streets, which is selectively imposed upon the beneficiaries." *Dosedel v. City of Ham Lake*, 414 N.W.2d 751, 755 (Minn. App. 1987). A municipality may assess "[t]he cost of any improvement, or any part thereof . . . upon property benefited by the improvement, based upon the benefits received." Minn. Stat. § 429.051 (2014). "A municipality's power of assessment, however, is limited by three conditions: (1) the land must receive a special benefit from the improvement being constructed; (2) the assessment must be uniform upon the same class of property; and (3) the

3

assessment may not exceed the special benefit." *David E. McNally Dev. Corp. v. City of Winona*, 686 N.W.2d 553, 558 (Minn. App. 2004) (citing *Carlson-Lang Realty Co. v. City of Windom*, 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976)).

"Special benefit is measured by the increase in the market value of the land owing to the improvement." *Carlson-Lang Realty*, 307 Minn. at 369, 240 N.W.2d at 519. "In appraising the subject property, an appraiser determines what a willing buyer would pay a willing seller for the property before, and then after, the improvement has been constructed." *Id*. An increase in market value is the special benefit conferred. *Id*. at 370, 240 N.W.2d at 519. "If the assessment is set higher than the special benefit conferred, it is a taking without compensation to the extent of the excess." *Id*. Because such a taking would violate the state constitution and Fourteenth Amendment, "the questions of whether or not the property assessed receives any special benefits, and whether or not the assessment made is greatly in excess of any special benefits received, are questions open for review by the court." *Id*. at 371, 240 N.W.2d at 520 (quotation omitted).

"[A]ny person aggrieved" by the adoption of an assessment "may appeal to the district court." Minn. Stat. § 429.081 (2014). The district court "shall either affirm the assessment or set it aside and order a reassessment." *Id*. In district court, "the city is presumed to have set the assessment legally, and thus introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed the special benefit." *Carlson-Lang Realty*, 307 Minn. at 370, 240 N.W.2d at 519. But a property owner may "overcome the presumption by introducing competent evidence that the assessment is greater than the increase in market value of the property due to the

4

improvement." *Id*. "When evidence is also received that the assessment is equal to or less than the increased market value, the district court must make a factual determination." *Id*., 240 N.W.2d at 519-20.

In this case, the assessment roll including the $375,000 assessment against Mini Storage's property was entered into evidence. Mini Storage overcame the presumption that the assessment was legally set by offering Herman's testimony and appraisal, which concluded that the city's project increased the market value of the property by only $52,000. The city introduced Gleason's testimony and both of his appraisals, the second of which concluded that the city's project increased the market value of the property by $329,000. Thus, the district court had to make a factual determination regarding the increased market value. *See id*. Before we review the district court's determination, we address the appropriate standard of review.

*Appellate Standard of Review*

The city contends that "the district court erred when it concluded that [Mini Storage's] property received a special benefit of only $52,000 as a result of the project." The city argues that "the decision of the district court is reviewed de novo, with impartial scrutiny of all the evidence" and that this court "need not accept any findings of the court below."

The city cites *Ewert v. City of Winthrop*, 278 N.W.2d 545 (Minn. 1979), in support of de novo appellate review. But *Ewert* does not support the city's position. In *Ewert*, the supreme court stated that "[a]fter the city presented its own evidence on this question [of the property's increased value resulting from an improvement], the *district court* had

5

to make a factual determination." *Ewert*, 278 N.W.2d at 548 (emphasis added). The supreme court then stated: "Where the landowner maintains that the assessment is excessive, this determination is to be a de novo one." *Id.* When those two lines are read together, it is clear that "de novo" refers to the district court's factual determination regarding the property's increased value, that is, the district court must make its determination without deferring to the city's assessment.

The supreme court's citation to *Buettner v. City of St. Cloud*, 277 N.W.2d 199 (Minn. 1979), further clarifies that the de novo reference in *Ewert* refers to the district court's determination of a factual issue, and not the appellate standard of review. *Id.* In *Buettner*, the supreme court stated, "where the sole issue presented is whether there has been an unconstitutional taking, the *trial court* cannot abrogate its duty to uphold constitutional safeguards and defer to the judgment of the taxing authority. Decision must be based upon independent consideration of all the evidence." 277 N.W.2d at 203 (emphasis added).

In *Ewert*, the supreme court quoted *Carlson-Lang Realty* for the appellate standard of review: "'The scope of our review is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment.'" *Ewert*, 278 N.W.2d at 549 (quoting *Carlson-Lang Realty*, 307 Minn. at 373, 240 N.W.2d at 521). *Carlson-Lang Realty* cites *G. C. Kohlmier, Inc. v. Albin*, which states that in applying this standard, appellate courts "must consider the testimony in the light most favorable to the prevailing party" and that district court findings "will not be reversed on appeal unless

they are manifestly contrary to the evidence." *G. C. Kohlmier, Inc. v. Albin*, 257 Minn. 436, 442-43, 101 N.W.2d 909, 914 (1960). The supreme court in *G. C. Kohlmier* noted that "[t]he adoption of Rule 52.01 of Rules of Civil Procedure has made no change in the method of review of findings of fact." *Id.* at 443, 101 N.W.2d at 914. Rule 52.01 states that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01.

In sum, *Ewert*, *Carlson-Lang Realty*, and *G. C. Kohlmier* set forth the clearly erroneous standard of review in the context of an appeal of a district court's finding regarding a property's increased value resulting from an improvement. *See Nelson v. City of St. Paul*, 256 N.W.2d 639, 640 (Minn. 1977) (citing *Carlson-Lang Realty* to conclude that "the trial court properly applied the standards we have established for review of assessments" and citing rule 52.01 to conclude that "[t]he findings by the trial court are not clearly erroneous"). We therefore apply the clearly erroneous standard, as described above.

*Competing Expert Appraisals*

At trial, the city adopted Gleason's second appraisal, in which he estimated that the city's project increased Mini Storage's property value by $329,000. The district court found that this appraisal, "showing a benefit of $329,000[,] does not support the assessment of $375,000."[2] Next, the district court rejected Gleason's $329,000 appraisal

---

[2] The city asks us to ignore the district court's findings regarding Gleason's appraisal. We decline to do so because the district court determined the increased market value of

7

because it relied on two assumptions that were "not realistic." Those assumptions are that (1) the "main rectangular portion of [Mini Storage's] property would be divided in[to] two equal lots," and (2) after construction of a public roadway and mitigation of all wetlands and storm-drainage ponds on a portion of the property, the two lots would be "immediately able to be developed for such uses as an office warehouse."

The district court reasoned that the first assumption is not realistic in part because (1) it requires that approval be granted to construct a public roadway across a portion of the property that overlays a large wetland; (2) it requires Mini Storage to dedicate the designated roadway portion of the property to the public; (3) it requires Mini Storage to construct a public road and pay for that construction; (4) it requires that once the designated roadway portion of the property is dedicated to the public, Mini Storage "will construct a 32-foot-wide commercial industrial street with concrete curb and gutter meeting the city standards"; (5) it requires Mini Storage to "agree to maintain [the] public road and right-of-way for as long as it exists"; and (6) the city did not present a legal justification for requiring a dedication of property and construction of public facilities as a prerequisite to receiving benefits of public improvements or for transferring the responsibility for maintenance of public utilities to a private property owner.

The district court reasoned that the second assumption is not realistic in part because (1) Gleason assumes that wetlands on the property "may be mitigated without impacting any portion of those same wetlands [that] extend beyond the border of [Mini

---

Mini Storage's property in the context of competing expert appraisals. We review the district court's determination in the context in which it was made.

8

Storage's] property"; (2) Gleason's assertion that no soil corrections will be required after the project to accommodate construction on the property is not supported by evidence presented at trial; and (3) Gleason did not consider the cost of removing the current improvements on the property.

In contrast, the district court credited Herman's appraisal. Herman determined that, as a result of the city's project, two acres of the property could be made into a separate marketable lot, increasing the market value by $52,000, and that the remaining property's highest and best use after the project would be identical to its current use as a mini-storage facility. In crediting this appraisal, the district court noted that Herman's appraisal "was prepared in conformity with the requirements of the Uniform Standards of Professional Appraisal Practice." The district court also noted that Herman used financial information regarding the net income from Mini Storage's property, "appropriately deducted all mortgage interest-related costs and depreciation costs," concluded that the property "created income in the amount of approximately $300,000," and used that number in a formula that functioned as an "income methodology" to "check against her determination that the highest and best use of [Mini Storage's] property, except in the north 2 acres, remains the same before and after the project."

In challenging the district court's finding regarding the property's increased market value, the city argues that the district court's decision "focused on the present use of the property" in violation of Minnesota law, which "requires the court to value the property based on its highest and best use." The city cites *Anderson v. City of Bemidji*, which states that "the market value may be calculated on the highest and best use of the

9

land." 295 N.W.2d 555, 560 (Minn. 1980). This argument is unavailing because, even assuming that valuation of the property must be based on its highest and best use, the district court adopted Herman's appraisal, which "determined that the highest and best use of the northerly 2 acres after the project would be to use it in any manner the present zoning of general industrial would authorize" and that the remaining property "had a highest and best use after the project [that] was identical to its highest and best use before the project, which is its present use as a mini storage facility."

The city also argues that the district court's decision could be reversible under *Ewert*. In *Ewert*, the supreme court reversed the district court's decision, in part, because the district court "gave no explanation for believing the city's expert rather than appellants'." 278 N.W.2d at 550. But in this case the district court thoroughly explained why it believed Herman, and not Gleason. The district court explained that Gleason's appraisal relies on two assumptions that are "not realistic" and provided at least nine reasons why those assumptions are unrealistic. Similarly, the district court explained why it credited Herman's appraisal, including that she used an "income methodology as a check against her determination that the highest and best use of [Mini Storage's] property, except in the north 2 acres, remains the same before and after the project." Because the district court provided an explanation for believing one expert over the other, the concern expressed in *Ewert* is inapplicable.

The city invites this court to scrutinize Herman's methodology, challenging "her assumption that 11.6 acres of the property could be developed and marketed as buildable square footage without creating new access" and "her assumption that it was not feasible

to access the benefits of the project and increase the value of the south portion of the property." But the "weight and credibility of . . . testimony, including that of . . . expert witnesses, [is] for the trier of fact to determine" and this court "will not reassess . . . experts' opinions on appeal." *DeSutter v. Twp. of Helena*, 489 N.W.2d 236, 240 (Minn. App. 1992) (quotation omitted) (declining to reassess calculations and comparisons used in a special-benefit appraisal), *review denied* (Minn. Sept. 30, 1992).

The city also invites this court to reevaluate the evidence the district court considered when addressing the overall cost and purpose of the project, the benefit of a storm pond, the costs to fill wetlands, the accessibility of the property, and the burden to construct access. The city asserts that the district court based its finding regarding increased market value on "irrelevant considerations" and "misunderstandings of the evidence." But this court's role "is not to weigh the evidence as if trying the matter de novo, but rather to determine if the evidence as a whole sustains the trial court's findings." *Twin City Hide v. Transamerica Ins. Co.*, 358 N.W.2d 90, 92 (Minn. App. 1984). We have carefully examined the record, including the competing appraisals, and we conclude that the evidence as a whole fairly supports the district court's factual determination that the increased market value of Mini Storage's property resulting from the city's improvements is no more than $52,000.

**Affirmed.**

11