*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0965**

Fred E. Friedrichs, et al.,
Appellants,

vs.

Lake Washington Sanitary District,
Respondent.

**Filed April 4, 2016
Affirmed
Stauber, Judge**

Blue Earth County District Court
File No. 07-CV13-4757

Karl O. Friedrichs, Friedrichs Law Office, P.A., Mankato, Minnesota (for appellants)

Benjamin D. McAninch, Paul R. Shneider, Blethon, Gage & Krause, PPLP, Mankato, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

# UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant-property owners challenge a district court decision upholding a special assessment following annexation of the property into respondent sanitary-sewer district and construction of a sanitary sewer on the property. We affirm because the district court did not err by ruling that appellants failed to rebut the presumption that the sanitary sewer

specially benefitted appellants' property and because the evidence as a whole fairly supports the assessment method used by respondent.

## FACTS

The Tri-Lakes area "is a regional recreational resource" that is used by adjacent landowners and the public. It encompasses properties located around Ballantyne Lake, Duck Lake, and Madison Lake near Mankato. In 2008, respondent Lake Washington Sanitary District (District) was approached by a group of landowners from the Tri-Lakes area who knew that their lakes had water-quality issues related to the use of antiquated septic systems on surrounding residential properties and that the lakes were not compliant with Minnesota Pollution Control Agency (MPCA) regulations.[1] They wanted the MPCA to annex 380 property parcels for inclusion in the District in order to address those issues. Despite the objections of appellants Fred E. Friedrichs and Kari L. Friedrichs and a small minority of other property owners, the District decided to petition the MPCA for annexation of the Tri-Lakes properties into the District in order to undertake a sanitary-sewer-improvement project. Following a public hearing, the District board voted to approve the petition after concluding that the sanitary-sewer project would be a permanent solution to the Tri-Lakes water-quality problems.

Appellants challenged the petition before an administrative law judge (ALJ), and then before the MPCA, which ultimately approved the petition. The ALJ considered whether annexation of the Tri-Lakes properties was administratively feasible, would

---

[1] Madison and Duck Lakes were deemed "impaired" by the MPCA.

2

promote "public health, safety and welfare," and could be "effectively accomplished on an equitable basis." In comprehensive findings, the ALJ noted that nearly half of the properties were noncompliant or likely noncompliant with environmental standards, or did not have records identifying the types of wastewater systems in current use. The ALJ found that "[a] significant number of the parcels within the proposed annexation area have wastewater systems that were installed prior to 1996." The ALJ also fully addressed alternatives for wastewater treatment in the Tri-Lakes properties, including "(1) holding tanks for seasonal cabins; (2) individual septic systems (with and without pre-treatment); (3) cluster systems; and (4) the establishment of a sanitary sewer system." After examining each alternative, including environmental considerations as well as cost, the ALJ concluded that a pressure-based sanitary-sewer system with grinder stations would be optimal for the Tri-Lakes properties.

Following annexation of the properties into the District, the District determined the special assessments to be levied on each Tri-Lakes property for the sanitary-sewer project (project) after holding a public hearing on November 25, 2013. The total amount of the special assessments for the project was $7,694,233.23; the individual assessment for appellants' property was $26,459.55. This sum included a private service charge and ring charge, regionalization, interim and long-term financing costs, and design and construction services.

Appellants challenged the tax levy for the special assessment in district court, arguing that the special assessment exceeded the benefit to their property from the project. In a bench trial held on March 5, 2015, the district court heard testimony from

3

appellant Fred E. Friedrichs and others on the assessment costs and property valuation differences associated with the project. Friedrichs testified that he built a house on his 0.8 acre parcel in 1997 and installed a septic system that, at that time, was compliant with all regulations, that the septic system was compliant in 2011 when last inspected, and that his enjoyment of his property was negatively affected by the noise from the grinder pump installed on his property. He further testified that the improvement did not increase the value of his property.

The district court also heard testimony from real-estate specialists and others regarding whether the project affected the value of the Friedrichs' property. The Friedrichs called Jim Pfau, a residential realtor, who testified that buyers are not generally concerned about whether septic systems are compliant and that the increase in the market value of the Friedrichs' property from the project was $5,000. Pfau admittedly does not specialize in lake-area real estate and has never sold property in the Tri-Lakes area.

The Friedrichses also called Timothy McPartland, a property appraiser, who appraised Friedrichs' property and concluded that there was no difference in the value of their property due to the improvement.

For the District, the district court heard valuation testimony from four witnesses. Lawrence Maruska, the District chair who became a board member in 2002, stated that the project was the most cost-effective method of obtaining a permanent solution to environmental issues associated with wastewater in the Tri-Lakes area. Maruska also testified that, over time, the value of the Tri-Lakes properties would increase by at least

4

the amount of the special assessments, "and in some cases even more." He further testified that the administration of the special assessments for the project was fair. He noted that the Friedrichs' opposition to the project had added over $150,000 to its overall cost.

Chuck Vermeersch, an engineer who worked as a project manager and calculated the individual assessments for the project, testified that the new sewer system was the most cost-effective method of treating wastewater for the Tri-Lake properties. He also explained each charge for individual properties and how they were calculated to be fair to each property owner. Vermeersch further testified that the placement of the grinder pump on the Friedrichs' property was done with their consent.

Finally, Richard Draheim, an area real-estate broker who specializes in lake property sales, testified. He stated that the value of the Friedrichs' property would increase $26,459.55 because of the sewer-improvement project, enumerating the factors he considered in arriving at this figure.[2] Draheim conceded that he is not a licensed real-estate appraiser.

The district court also considered the deposition testimony of Peter Otterness, a former county employee who worked as an environmental-health specialist in septic-system compliance. He stated that two properties on the street where the Friedrichs live failed compliance inspections and have septic systems that predate 1996 regulations.

---

[2] Although appellants characterized Draheim's testimony as stating that the value of the improvement to the parcel would be realized in 10 to 30 years, what he actually said was that he would "be surprised" if the value was not realized sooner.

In reaching its decision to uphold the special assessment, the district court specifically credited Draheim's experience and testimony and noted that "[a]ll three real estate experts agreed that bringing a failing septic system into compliance and cleaning up improper wastewater discharge would increase the value of a property," that the sanitary-sewer system installed would provide a long-term cost-effective solution in the Tri-Lakes area, and that the Friedrichs' property was specially benefited by the improvement. The district court affirmed the levy of $26,459.55 against the Friedrichs' property for the special assessment. The Friedrichs appealed.

## D E C I S I O N

"A special assessment is a tax, intended to offset the cost of local improvements such as sewer, water and streets, which is selectively imposed upon the beneficiaries." *Dosedel v. City of Ham Lake*, 414 N.W.2d 751, 755 (Minn. App. 1987); *see* Minn. Stat. § 429.051 (2014) ("The cost of any improvement . . . may be assessed upon property benefited by the improvement . . . ."). Minn. Stat. § 429.081 (2014), permits any person aggrieved by adoption of an assessment to appeal the levy of the assessment to the district court.

A limitation on a municipality's power to levy a special assessment is that "(1) the land must receive a special benefit from the improvement being constructed; (2) the assessment must be uniform upon the same class of property; and (3) the assessment may not exceed the special benefit." *David E. McNally Dev. Corp. v. City of Winona*, 686 N.W.2d 553, 558 (Minn. App. 2004). A "[s]pecial benefit is measured by the increase in the market value of the land owing to the improvement." *Carlson-Lang Realty Co. v.*

6

*City of Windom,* 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976). Market value is typically proved by having an "appraiser determine[] what a willing buyer would pay a willing seller for the property before, and then after, the improvement has been constructed." *Carlson-Lang Realty Co.*, 370 N.W.2d at 369, 240 N.W.2d at 519. "Until it is proven to the contrary, [the municipality] is presumed to have set the assessment legally, and thus introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed [the] special benefit." *Id.* The presumption of a special assessment's legality may be overcome by "introducing competent evidence that the assessment is greater than the increase in market value of the property due to the improvement." *Tri-State Land Co. v. City of Shoreview*, 290 N.W.2d 775, 777 (Minn. 1980). "If the assessment is set higher than the special benefit conferred, it is a taking without compensation to the extent of the excess." *Carlson-Lang Realty Co.*, 307 Minn. at 370, 240 N.W.2d at 519.

Our scope of review of a district court decision addressing a challenge to the validity of a municipal assessment, "is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn supports its conclusions of law and judgment." *Id*. at 373, 240 N.W.2d at 521. This court must affirm the district court's findings of fact unless they are clearly erroneous. *Nelson v. City of St. Paul*, 256 N.W.2d 639, 640 (Minn. 1977).

I.    **Assessment's presumption of legality**

Appellants argue that the district court erred by relying on the testimony of respondent's valuation witnesses because their testimony lacked the specificity required

for the district court to conclude that appellants' property would benefit from the sanitary-sewer improvement. Given that the special assessment is presumed by law to be valid, the first question is not whether the special assessment was supported by sufficient evidence, but whether appellants overcame the presumption of validity with competent evidence showing that the property did not benefit from the improvement. *See Buettner v. City of St. Cloud*, 277 N.W.2d 199, 204 (Minn. 1979) (stating with regard to the special-benefit presumption, "[a] presumption makes a prima facie case which is dispositive in the absence of evidence; it disappears when adverse evidence on the question of value is introduced"); *see also American Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 789 (Minn. App. 2011) ( "For the purpose of establishing a prima facie case that an assessment is valid, a calculation based on the cost of the improvement is deemed reasonably related to the value of special benefits." (quotation omitted)).

To challenge the prima facie legality of the assessment, appellants testified that the improvement did not increase the value of their parcel, and they offered testimony from Pfau that the increase in market value was only $5,000, and from McPartland that there was no difference in the parcel's market value due to the improvement. Respondent argues that this testimony was insufficient to rebut the presumption of legality. As respondent points out, Fred E. Friedrichs has no experience from which to form a competent opinion on the difference in his property's value due to the sanitary sewer improvement. *Contrast E.H. Wilmmus Prop., Inc. v. Vill. of New Brighton*, 293 Minn. 356, 359, 199 N.W.2d 435, 437 (1972) (crediting the testimony of an assessed property

owner who "had an extensive background in real estate and industrial development"). In addition, Pfau has no experience selling or valuing lake property and did not sell property in the Tri-Lakes area. For this reason, the district court did not err by declining to rely on Pfau's testimony in determining the change in market value to appellants' property from the sanitary sewer improvement project.

Moreover, the district court did not credit the testimony of McPartland. While the district court noted that McPartland conducted "before and after appraisals" of appellants' parcel, the district court rejected McPartland's use of comparable properties because he admitted that there were too few properties from which to form a valid comparison, the comparables did not include the 2014 selling-season sales, and the comparables "did not consider soil maps or septic compliance in the neighborhood." "As fact finder, the [district] court was not bound by the testimony of an expert. Further, the trial court is in the best position to assess the credibility of witnesses . . . ." *Dosedel*, 414 N.W.2d at 756; *see DeSutter v. Twp. of Helena*, 489 N.W.2d 236, 240 (Minn. App. 1992) (stating that for special-benefit determination, the "weight and credibility of . . . testimony, including that of . . . expert witnesses, [is] for the trier of fact" (quotation omitted)), *review denied* (Minn. Sept. 30, 1992). In his testimony, Draheim challenged both the validity of the comparables chosen by McPartland and some of the figures he used to calculate market value. The district court's conclusion that appellants did not overcome the presumption of the assessment's validity is supported by the evidence and by its findings.

## II. Property-value increase

9

Appellants next argue that the District applied an assessment method that is void on its face because it simply allocated costs among the Tri-Lakes parcels rather than specifically considering the market-value increase to appellants' parcel due to the sanitary-sewer improvement. Under Minnesota law, "The cost of any improvement, or any part thereof, may be assessed upon property benefited by the improvement, based upon the benefits received, whether or not the property abuts on the improvement . . . ." Minn. Stat. § 429.051 (2014). Once an assessment is approved, the procedure for calculating the portion to be paid by individual property owners is the following: "the clerk, with the assistance of the engineer or other qualified person selected by the council, shall calculate the proper amount to be specially assessed for the improvement against every assessable lot, piece or parcel of land, without regard to cash valuation, in accordance with the provisions of section 429.051." Minn. Stat. § 429.061, subd. 1 (2014).

> It is well established . . . that the relative benefits from an improvement are calculated on the market value of the land before and after the improvement and that the market value may be calculated on the highest and best use of the land. . . . [A]ny method resulting in a fair approximation of the increase in market value for each benefited parcel may be used. Thus, as long as a valuation method fairly approximates the increase in a parcel's market value, it may be used in an assessment proceeding.

*DeSutter*, 489 N.W.2d at 238 (citations and quotations omitted). The four typical valuation methods used to calculate market value include, "(1) the market-data approach based on comparable sales; (2) the income-capitalization approach; (3) the reproduction-cost, less depreciation, approach; and (4) the development-cost approach." *Eagle Creek*

10

*Townhomes, LLP v. City of Shakopee*, 614 N.W.2d 246, 251 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000).

Respondent did not offer an appraisal to establish the change in market value to appellants' property from installation of the sanitary sewer, but Draheim explained the basis for his opinion that the property would increase in value at least $26,459.55, or the amount of the special assessment. He testified that he used a software program that produced an "RPR report" that applied data from "overall county information" and "sales comparables" to calculate a market value for appellants' parcel. He also offered further testimony supportive of a determination that appellants' property benefited from the improvement, including that: (1) sanitary-sewer systems are more preferable to septic systems because lenders now require septic-system compliance before approving home financing; (2) compliance systems for septic systems are constantly changing; (3) property values are negatively affected by the presence of septic systems because of their need for drain fields and mounds; (4) septic systems require ongoing maintenance; (5) septic systems tend to freeze in the winter; and (6) homes that use sewer systems sell more quickly than those that use septic systems. Ultimately, Draheim compared the market value of appellants' property before the improvement to the market value of the property after the improvement to arrive at the figure representing the property's increased value from the improvement, which is the traditional approach used by appraisers. *See id.* ("Characteristically, an appraiser in a special-assessment case is to give two values to the property: the first is the value of the property before the public improvement is in place and the second is the value of the property after the improvement

11

is in place."). Finally, Draheim challenged the validity of the comparables used by McPartland to support his appraisal. In its findings, the district court specifically "credit[ed] Mr. Draheim's experience and testimony."

Given our deferential standard of review, we conclude that Draheim's testimony was sufficient to support the $26,459.55 increase in market value of appellants' property due to the improvement. The law does not require application of a specific method to prove market value; it requires only the use of "any method resulting in a fair approximation of the increase in market value for each benefited parcel[;] . . . as long as a valuation method fairly approximates the increase in a parcel's market value, it may be used in an assessment proceeding." *DeSutter*, 489 N.W.2d at 238 (citation omitted). In *Eagle Creek Townhomes, LLP*, this court affirmed a special assessment that used a valuation method that had not been previously recognized, but "yield[ed] fair approximations of both the before and after values of the [subject] property." 614 N.W.2d at 251-52. Likewise, Draheim's testimony is sufficient to prove the market value of appellants' property.

In *Special Assessment for Maplewood Public Project No. 78-10 by Oxford v. City of Maplewood*, this court reversed a special assessment of over $24,000 to a property for a storm sewer improvement when "[t]here was no credible evidence to support the [district] court's finding" that the value of the subject property increased by at least that amount from the improvement. 358 N.W.2d 106, 108 (Minn. App. 1984). Appellants argue that this case is controlling here. We disagree. Respondent offered credible evidence to support an increase in the value of appellants' property due to the

12

improvement, and the evidence is sufficient to support the district court's decision to uphold the special assessment. *See DeSutter*, 489 N.W.2d at 239 ("The scope of [appellate] review is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment. The evidence must be against the findings to justify a reversal." (quotations omitted)); *Twin City Hide v. Transamerica Ins. Co.*, 358 N.W.2d 90, 92 (Minn. App. 1984) (stating that in evaluating a district court determination of market value, it is not this court's role "to weigh the evidence as if trying the matter de novo, but rather to determine if the evidence as a whole sustains the [district] court's findings").

### III.    Evidence considered at trial

Appellants argue that the district court improperly considered evidence that was irrelevant to the special-assessment proceeding. They cite to several factual findings made by the district court that set forth historical facts from earlier proceedings, as well as four exhibits and testimony related to them. It is unclear how appellants conclude that this information is not relevant to the issues presented, nor do appellants cite to any legal authority or ask for specific relief due to this assertion. Under these circumstances, appellants have not established proper grounds for relief. *See Louden v. Louden*, 221 Minn. 338, 339, 22 N.W.2d 164, 166 (1946) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere

13

inspection."); *In re Estate of Grote*, 766 N.W.2d 82, 88 (Minn. App. 2009) ("This court declines to address allegations unsupported by legal analysis or citation.").

**Affirmed.**